**James Lee BYRD, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–04–00883–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 26, 2006.

Discretionary Review Refused
July 26, 2006.

Emily Munoz–DeToTo, Houston, for appellants

William J. Delmore III, Houston, for The State.

Panel consists of Chief Justice HEDGES and Justices ANDERSON and FROST.

## MAJORITY OPINION

JOHN S. ANDERSON, Justice.

Appellant, James Lee Byrd, pled guilty to the murder of Brenida Johnson, and the jury assessed punishment at ninety-nine years' confinement in the Texas Department of Criminal Justice, Institutional Division. In two issues, appellant alleges the trial court erred in (1) admitting unfairly prejudicial medical records of the victim and (2) giving an ambiguous jury instruction on parole eligibility. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant and Johnson had been living together at the Skylane Apartments. Prior to the incident in this case, on June 29, 2003, police arrested appellant for assaulting Johnson. He pled guilty and was sentenced to ninety days in Harris County Jail. After being released, sometime during the evening of August 26, the power to Johnson's apartment was turned off twice. According to testimony from her new boyfriend, James Daniel, Johnson suspected appellant turned off the power. The next morning, August 27, Daniel told Johnson to stay in her apartment and call the police, and he would be there in a few minutes to drive her to work. Instead, Johnson left her apartment around 7:00 A.M. to walk to the bus stop to go to work.

According to appellant, he showed up to ride the bus with Johnson while she rode to work. Before getting to the bus stop, appellant chased Johnson around a car while Johnson screamed for help. Appellant eventually caught Johnson, sat on her, and repeatedly stabbed her with a knife appellant had stolen the night before. Police arrived at the scene and arrested appellant.

Doctors treated Johnson at Ben Taub General Hospital for stab wounds to her chest, abdomen, arm, heel, and hands. While doctors operated, Johnson received approximately ten liters of blood, twice what the human body holds. Her prognosis was poor. Because of the blood loss, she suffered significant brain damage, but she was not brain dead. On October 29, Johnson was transferred to the Green Acres Convalescent Center in Beaumont in a permanent vegetative state. On December 28, she went into full arrest and emergency room doctors pronounced her dead on arrival at Memorial Hermann Baptist Beaumont Hospital. The cause of death was multiple stab wounds and complications thereof.

Appellant pled guilty to murder and elected for the jury to assess punishment. During the punishment hearing, the State admitted over 500 pages of medical records into evidence, including 340 pages of records from Johnson's stay at the Green Acres Convalescent Center. After hearing the evidence, the jury assessed punishment at ninety-nine years' confinement in the Texas Department of Criminal Justice, Institutional Division.

DISCUSSION

## I. Brenida Johnson's Medical Records

■ In his first issue, appellant contends the trial court abused its discretion when it admitted Johnson's medical records into evidence. Appellant argues the admission of this large amount of records, containing intimate and disturbing details about the daily routine of Johnson's life for several months before her death, inflamed the jury and was unfairly prejudicial to appellant. To preserve error in admitting evidence, a party must make a timely and specific objection and obtain a ruling on that objection.[1] TEX.R.APP. P. 33.1(a); *Wilkerson v. State*, 874 S.W.2d 127, 131 (Tex. App.-Houston [14th Dist.] 1994, pet. ref'd).

In this case, the State moved to admit State's Exhibit 19 (340 pages of medical records from Green Acres Convalescent Center) and State's Exhibit 20 (8 pages of medical records from Memorial Hermann Baptist Beaumont Hospital) into evidence. Appellant made no objection to this evidence at trial. Defense counsel clearly stated to the trial judge he did not have any objection to either exhibit. Therefore, appellant preserved nothing for review, and we overrule this issue.

## II. Jury Charge

■ In his second issue, appellant contends he was denied due process under the Fourteenth Amendment when the trial

court gave a jury instruction during the punishment phase according to Article 37.07, Section 4. Appellant did not object to this jury instruction at trial. In the absence of an objection, we will first determine whether the trial court erred in giving the Article 37.07, Section 4 jury instruction, and if we find error, we will review the complaint according to *Almanza*.[2] *Jimenez v. State*, 32 S.W.3d 233, 238–39 (Tex.Crim.App.2000).

■ Article 37.07, Section 4 instructs the jury on the mechanics of parole law and is a mandatory jury instruction. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4 (Vernon Supp.2005); *Luquis v. State*, 72 S.W.3d 355, 363 (Tex.Crim.App.2002). Appellant argues the instruction is ambiguous and misleading as applied to him because it allows the jury to consider the existence of parole laws but also instructs them to not consider parole eligibility as it may apply to this particular defendant. In essence, appellant contends this instruction tempts the jury into using parole law when determining a particular sentence. Appellant argues there is a reasonable likelihood this jury was misled and violated the challenged instruction because they sent out a note during deliberations. The note said: "What's the difference between a life sentence and a 99 [year] sentence? Specifically, regarding length of term." The trial court's response was: "Please refer to

1. In its brief, the State argues appellant did not preserve error because he does not direct this court to the proper place in the record where the complained of error may be found. Appellant's brief cites to CRII: 320–328 and State's Exhibits 9–11. This citation was clearly in error because this portion of the record contains a limited number of pages of medical records and photographs of the crime scene. Appellant's brief does cite to the record at RR5: 53–54 where two exhibits containing medical records were admitted into evidence. This record reference, along

with appellant's argument in his brief, is sufficient for this court to ascertain appellant's first issue pertained to records created after Johnson's transfer to the Green Acres Convalescent Center. *See* TEX.R.APP. P. 38.1(h).

2. *Almanza v. State*, 686 S.W.2d 157, 172 (Tex. Crim.App.1984) (holding appellant bringing jury charge error complaint on appeal when no objection was made at trial must demonstrate the error caused egregious harm).

page 3 of the court's charge and continue your deliberations."

An appellate court may presume the jury will follow an instruction as given. *Luquis*, 72 S.W.3d at 366; *Williams v. State*, 937 S.W.2d 479, 490 (Tex.Crim.App. 1996). We will not find federal constitutional error unless we conclude there is a reasonable probability the jury was actually confused by the instruction. *Luquis*, 72 S.W.3d at 366–67. We presume this jury followed the trial judge's instructions when first given and after it received the answer to its question. The presumption is rebuttable, but appellant points to no evidence in rebuttal. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex.Crim.App.1998). Absent any evidence on the issue, we will not engage in raw speculation regarding the conduct of the jurors. Nothing in the jury note alone leads us to conclude there was any confusion or misapplication of the law. *See id.; Graham v. State*, 96 S.W.3d 658, 661 (Tex.App.-Texarkana 2003, pet. ref'd) (holding a question in a jury note alone is insufficient to rebut the presumption that jurors followed the instruction to not consider parole in its deliberations). Finding no error, we overrule appellant's second issue.

## CONCLUSION

Having reviewed and considered both issues presented by appellant, we affirm the judgment of the trial court.

FROST, J., Concurring.

KEM THOMPSON FROST, Justice, concurring.

In his second issue, appellant asserts that the trial court's jury charge regarding parole violated his due process rights under the Fourteenth Amendment to the United States Constitution. Appellant argues that the wording of the charge is ambiguous and caused the jury to improperly consider parole eligibility in assessing his sentence. I write separately to address both the proper analysis of this issue and appellant's argument that it is improper and unconstitutional for the jury to consider parole eligibility in determining punishment. Some background is helpful to understand the context of these issues.

Historically, Texas law prohibited a jury from considering parole law in any way whatsoever in assessing punishment. *See, e.g., Clark v. State*, 643 S.W.2d 723, 724–25 (Tex.Crim.App. [Panel Op.] 1982) (stating that a jury's consideration of parole in assessing punishment is an "evil to be avoided" and that "a jury in a felony case is not authorized to consider or apply parole law in assessing punishment"); *Sanders v. State*, 580 S.W.2d 349, 351–52 (Tex. Crim.App. [Panel Op.] 1978) (stating that it is improper for a jury to discuss or consider parole and that it is an unconstitutional violation of separation of powers for a jury to increase punishment based on consideration of parole laws). Nonetheless, in 1985, the Texas Legislature added section 4 to article 37.07, which required trial courts to instruct juries in non-capital felony trials about parole law generally. *See* Acts 1985, 69th Leg., ch. 576, §§ 1, p. 2195.

Two years later, the Texas Court of Criminal Appeals declared that statute unconstitutional, finding it violated the separation of powers and due course of law doctrines. *See Rose v. State*, 752 S.W.2d 529, 535 (Tex.Crim.App.1987) (declaring § 4(a) of article 37.07 unconstitutional, on the basis that it violated separation of powers and due course of law clauses). In 1989, in reaction to the *Rose* decision, Texas citizens voted to amend Article IV, Section 11(a) of the Texas Constitution, as reflected in the following italicized language:

The Legislature shall by the law establish a Board of Pardons and Paroles and shall require it to keep record of its actions and the reasons for its actions. The Legislature shall have authority to enact parole laws *and laws that require or permit courts to inform juries about the effect of good conduct time and eligibility for parole or mandatory supervision on the period of incarceration served by a defendant convicted of a criminal offense.*

See Tex. S.J. Res. 4, 71st Leg., R.S., 1989 Tex. Gen. Laws 6414; Act of May 3, 1989, 71st Leg., R.S., ch. 103, § 1, 1989 Tex. Gen. Laws 442–43 (emphasis added to show additions made by 1989 amendment).

This amendment explicitly authorized the Texas Legislature to enact a statute to fulfill the citizens' mandate. *See Oakley v. State,* 830 S.W.2d 107, 109 (Tex.Crim.App. 1992) (stating that "[t]his amendment clearly authorized the Legislature to enact laws that permit or require courts to inform juries about the effect and operation of parole laws. In fact, in 1989 the Bill Analysis for Senate Joint Resolution No. 4, the precursor to the amendment in Article IV, Section 11(a), stated that the purpose for the amendment was to 'establish a constitutional basis for any legislative efforts to provide courts with a jury charge regarding good conduct time and parole.' Thus, when the Legislature re-enacted Article 37.07, Section 4, in 1989, it did so pursuant to express constitutional authority"). Under the authority of this part of the Texas Constitution, the Legislature re-enacted article 37.07, section 4(a) in 1989. The Court of Criminal Appeals determined that the re-enacted statute did not violate a defendant's rights under either the due-course-of-law or the separation-of-powers provisions of the Texas Constitution. *See Oakley v. State,* 830 S.W.2d 107, 108–12 (Tex.Crim.App.1992). By explicitly changing the Texas Constitution in this way, the people of Texas articulated a will and intent that the Texas Legislature be authorized to enact statutes allowing trial courts to inform juries about the operation and effect of parole laws. *See id.* at 110. The Court of Criminal Appeals also determined that article 37.07, section 4(a)'s parole instruction does not violate the federal constitution's due process clause. *See Muhammad v. State,* 830 S.W.2d 953, 956 (Tex.Crim.App.1992) (stating that parole instruction gives jury accurate information on the law applicable to the case and correctly instructs the jury not to speculate on what parole authorities will do and holding that the parole instruction mandated in article 37.07, section 4(a) does not violate federal due process).

Article 37.07, section 4(a) does not apply to capital murder cases, and until 1999, the prohibition on considering parole continued in those cases. *See Colburn v. State,* 966 S.W.2d 511, 516 (Tex.Crim.App.1998) (stating that Court of Criminal Appeals has repeatedly held that parole eligibility is not a proper consideration at sentencing in a capital case and that the trial court in a capital case may properly instruct the jury not to consider parole laws in sentencing). In 1999, however, the Texas Legislature again exercised its authority under the 1989 constitutional amendment and enacted a statute requiring that trial courts in capital murder cases instruct the jury that, if sentenced to life imprisonment, a capital murder defendant is not eligible for release on parole until the actual time served by the defendant equals forty years regardless of good conduct time. *See Act of May 8, 1999, 76th Leg., R.S., ch. 140, § 1, 1999 Tex. Gen. Laws 600.*

## Legal Standard

Appellant did not object to the jury charge. Therefore, error, if any, does not require reversal unless it was so egregious

and created such harm that appellant was denied a fair trial. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). Ordinarily, we first would determine whether the jury charge is erroneous. *Hutch v. State,* 922 S.W.2d 166, 170 (Tex. Crim.App.1996). Then, if so, we would determine whether the error in the charge resulted in egregious harm. *Id.* However, appellant does not assert that the trial court erred or violated his constitutional rights in instructing the jury with the statutorily mandated language. Rather, appellant asserts that his federal due process rights were violated because the record purportedly shows a reasonable likelihood that the jury applied the challenged instruction in a way that violates the United States Constitution. Federal due process is violated if a review of the entire trial record and the challenged instruction in the context of the whole charge show a reasonable likelihood that the jury applied the instruction in a way that violates the United States Constitution. *See Victor v. Nebraska,* 511 U.S. 1, 6, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994); *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991); *Luquis v. State,* 72 S.W.3d 355, 366 (Tex.Crim.App. 2002). Appellant does not assert any other alleged egregious harm, and this court should presume that such a due process violation would satisfy the *Almanza* egregious harm standard. *See Almanza,* 686 S.W.2d at 171. Appellant has not asserted any violation of the Texas Constitution.

The majority opinion correctly cites *Luquis* for the proposition that this court will not find federal constitutional error unless we conclude that a reasonable jury probably was actually confused by the charge.[1] However, this statement may be misleading because the *Luquis* opinion and the cases cited therein show that, while such confusion may be necessary for a showing of this type of federal due process violation, it is not sufficient for such a showing. *See Victor,* 511 U.S. at 6, 114 S.Ct. at 1243; *McGuire,* 502 U.S. at 72, 112 S.Ct. at 482; *Luquis,* 72 S.W.3d at 364–68. In addition to establishing a reasonable probability that the charge confused or misled the jury, appellant also must demonstrate that the jury's confusion or misunderstanding violated the United States Constitution.[2]

**A.** *Is there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the United States Constitution?*

The record does not reflect that the jury speculated as to when, if ever, appellant would be released on parole. Presuming for the sake of argument that, as a result of this instruction, the jury did so or that the jury considered the effect of the parole

---

1. *See* ante, at p. 72 (citing *Luquis,* 72 S.W.3d at 366–67).

2. The trial court gave the following instruction regarding parole:

Under the law applicable in this case it is possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less. Eligibility for pa-

role does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law. However, you are not to consider the manner in which the parole law may be applied to this particular defendant.

The trial court did not instruct the jury regarding good conduct time, and this issue is not before us in this case.

laws on appellant in some other way that is allegedly impermissible under Texas law, appellant has not cited and research has not revealed any case holding that such action by the jury would violate the United States Constitution. *See O'Dell v. Netherland,* 521 U.S. 151, 159–66, 117 S.Ct. 1969, 1974–78, 138 L.Ed.2d 351 (1997) (stating that in *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) (plurality decision) (holding that due process requires capital murder defendant be allowed to inform the jury that the alternative sentence to death is life without parole, if applicable law so provides), Supreme Court created the only exception to the rule that the federal constitution generally will not interfere with a state's decision regarding whether to inform the jury of postsentencing legal eventualities); *Caldwell v. Mississippi,* 472 U.S. 320, 342, 105 S.Ct. 2633, 2646, 86 L.Ed.2d 231 (1985) (O'Connor, J., concurring and concurring in the judgment) (stating that *Ramos* does not suggest the United States Constitution prohibits giving accurate instructions regarding postsentencing procedures); *California v. Ramos,* 463 U.S. 992, 1001–1005, 1014, 103 S.Ct. 3446, 3453–55, 3460, 77 L.Ed.2d 1171 (1983) (holding that an instruction informing the jury that a defendant sentenced to life in prison without parole could nonetheless be rendered parole eligible if the Governor elected to commute his sentence did not violate the Eighth or Fourteenth Amendments and stating that the wisdom of state statutes regarding the jury's consideration of the possibility of commutation, pardon, parole, or clemency is best left to the States); *Salazar v. Dretke,* 419 F.3d 384, 390–91, 399, 403 & n. 31 (5th Cir.2005) (stating that no clearly established Supreme Court authority holds that a defendant is entitled to a new trial when one juror misstates the law of parole to other jurors during deliberations and stating that there is no indication from the United States Supreme Court that a jury's discussion of parole law runs counter to any federal constitutional principle). Although appellant asserts in his brief that a state-court jury's consideration of parole laws in assessing punishment violates the United States Constitution, he cites no authority for this proposition, and this proposition is incorrect. *See O'Dell,* 521 U.S. at 159–66, 117 S.Ct. at 1974–78; *Caldwell,* 472 U.S. at 342, 105 S.Ct. at 2646; *Ramos,* 463 U.S. at 1001–05, 1014, 103 S.Ct. at 3453–55, 3460; *Salazar,* 419 F.3d 384, 390–91, 399, 403 & n. 31. Therefore, this court should conclude there is no reasonable likelihood that the jury applied the challenged instruction in a way that violates the United States Constitution. The record does not show that appellant suffered egregious harm as a result of the trial court's instructions regarding parole.

**B. *How does a jury consider the existence of parole law but not the manner in which parole law may be applied to the particular defendant whose sentence the jury is assessing?***

Appellant asserts that Texas juries may not consider parole in assessing punishment and that the trial court's jury instructions confused the jurors and caused them to consider parole in assessing appellant's punishment. Although these issues might be relevant to a challenge under the Texas Constitution, as discussed above, we need not address these issues to dispose of appellant's challenge under the United States Constitution. Nonetheless, discussing these issues may be worthwhile because there is some confusion in the law.

The fundamental law of Texas has been changed by constitutional amendment to allow juries to learn of the effect of parole eligibility on the period of incarceration to be served by a defendant convicted of a criminal offense. *See Oakley,* 830 S.W.2d

at 108–12. However, even after this change in Texas law, Texas courts of appeals have disagreed over the extent, if any, to which juries may consider parole law in assessing punishment. *See Chester v. State*, 167 S.W.3d 935, 936–38 (Tex.App.-Amarillo 2005, pet. ref'd) (holding that trial court reversibly erred in overruling objection to prosecutor's closing argument, which stated that Mr. Chester, if sentenced to twenty years, would not be eligible for parole until his actual time served plus any good-conduct time equaled five years and stating that the legislature has expressly prohibited juries from considering parole in setting punishment); *Nash v. State*, 175 S.W.3d 427, 430–31, (Tex.App.-Texarkana 2005, pet. filed) (holding that trial court correctly refused appellant's counsel's request to read the court's instruction regarding parole to the jury during closing argument because reading this part of the court's charge would improperly ask the jury to consider defendant's parole eligibility); *Stroud v. State*, 2002 WL 31727251, at *5 (Tex.App.-El Paso Dec.5, 2002, no pet.) (stating that mandatory article 37.07, section 4(a) instruction requires jury not to consider parole in assessing punishment) (not designated for publication); *Facundo v. State*, 971 S.W.2d 133, 135–36 & n. 1 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd) (indicating that article 37.07, section 4(a) allows closing argument that "a person" sentenced to ten years' imprisonment will not be eligible for parole until he actually serves five years but that it is improper to argue that if you give "Mr. Facundo" a ten-year sentence, then he will not be eligible for parole until he actually serves five years); *Taylor v. State*, 911 S.W.2d 906, 911–12 (Tex.App.-Fort Worth 1995, pet ref'd) (same as *Facundo*); *Dumesnil v. State*, 2002 WL 58825, at *5–7 (Tex.App.-Houston [14th Dist.] Jan. 17, 2002, no pet.) (holding that trial court's use of article

37.07, section 4(a) instruction stating that defendant would be eligible for parole after serving one-fourth of his sentence or fifteen years, whichever is less, was egregious harm because defendant would not actually be eligible for parole until he had served one-half of his sentence or thirty years, whichever is less, and because this error actually harmed defendant by misleading the jury, during its punishment deliberations into thinking that defendant would be eligible for parole much earlier than he really would be) (not designated for publication); *see also Taylor*, 911 S.W.2d at 914–15 (Dauphinot, J., concurring) (stating that it is a legal fiction to instruct a jury on a defendant's parole eligibility and then expect the jury not to take it into account in assessing punishment).

A resolution to this uncertainty in the case law may be found in two recent death-penalty cases. *See Ross v. State*, 133 S.W.3d 618, 623–24 (Tex.Crim.App. 2004); *Turner v. State*, 87 S.W.3d 111, 116–17 (Tex.Crim.App.2002). Although the instruction on parole eligibility in article 37.071, section 2(e)(2) does not contain the language, "You are not to consider the manner in which the parole law may be applied to this particular defendant" as do the instructions contained in article 37.07, section 4(a), the trial courts in *Ross* and *Turner* added similar language to the article 37.071, section 2(e)(2) instructions during the penalty phase of the capital murder trial. *Compare* TEX.CODE CRIM. PRO. art 37.07, § 4(a) (Vernon Supp.2005) *with* TEX.CODE CRIM. PRO. art 37.071, § 2(e)(2) (Vernon Supp.2005). *See Ross*, 133 S.W.3d at 623–24; *Turner*, 87 S.W.3d at 116–17. In both *Ross* and *Turner*, the Court of Criminal Appeals stated that it was proper for the jury to consider that "a life-sentenced appellant" would not be eligible for parole for forty years. *See Ross*, 133

S.W.3d at 623–24; *Turner,* 87 S.W.3d at 116–17. Further, in *Turner,* the Court of Criminal Appeals pointed out that, while the jury could consider a life-sentenced appellant's parole eligibility, it should not consider when, if ever, a life-sentenced appellant would be paroled after becoming eligible for parole. *See Turner,* 87 S.W.3d at 116. Although these cases are capital murder cases and did not specifically involve article 37.07, section 4(a), it would be unreasonable and illogical to construe that statute differently.

Therefore, in cases involving an article 37.07, section 4(a) jury instruction, the jury may base its assessment of punishment in part on consideration of a sentenced defendant's parole eligibility under the formula contained in the instruction; however, a jury may not base its assessment of punishment on speculation as to when, if ever, the defendant may be released on parole after becoming eligible for parole. *See Ross,* 133 S.W.3d at 623–24; *Turner,* 87 S.W.3d at 116–17; *Dumesnil,* 2002 WL 58825, at *5–7 (indicating this construction of article 37.07, section 4(a) in determining appellant suffered egregious harm as a result of trial court's use of article 37.07, section 4(a) instruction stating that defendant would be eligible for parole after serving one-fourth of his sentence or fifteen years, whichever is less, in case in which defendant would not actually be eligible for parole until he had served one-half of his thirty-year sentence, whichever is less). Therefore, the jury instruction in article 37.07, section 4(a) that the jury is "not to consider the manner in which the parole law may be applied to this particular defendant" refers to speculation about when, if ever, this particular defendant might be released on parole. It does not refer to the jury's consideration of a sentenced defendant's parole eligibility under the formula contained in the instruction. *See Ross,* 133 S.W.3d at 623–24; *Turner,*

87 S.W.3d at 116–17; *Dumesnil,* 2002 WL 58825, at *5–7; *see also Hawkins v. State,* 135 S.W.3d 72, 74, 77–85 (Tex.Crim.App. 2004) (analyzing trial court's ruling on motion for mistrial in case in which prosecutor improperly speculated that appellant would be released on parole as soon as he was eligible).

This construction is consistent with the Texas cases holding that the purpose of the article 37.07, section 4(a) instructions is to produce longer sentences. *See Grigsby v. State,* 833 S.W.2d 573, 575–76 (Tex.App.-Dallas 1992, pet. ref'd) (holding that trial court's error in completely omitting instructions mandated by article 37.07, section 4(a) was harmless because the State benefits from these instructions, which are intended to increase jury sentences); *Parker v. State,* 2004 WL 2113050, at *5–7 (Tex.App.-El Paso Jan. 17, 2004, no pet.) (holding that trial court's use of article 37.07, section 4(a) instruction stating that defendant would be eligible for parole after serving one-half of his sentence or thirty years, whichever is less, harmless in case in which defendant actually would be eligible for parole after serving one-fourth of his sentence and noting that these instructions are intended to increase jury sentences, but that the erroneous parole eligibility formula in that case favored defendant) (not designated for publication).

Nothing in our record indicates that the jury improperly speculated as to when, if ever, appellant would be released on parole. The jury's note asking about the difference between a life sentence and a ninety-nine-year sentence as to length of term does not indicate any such speculation. The jury note seems to indicate that the jury was considering the existence of parole and the parole eligibility of a sentenced defendant; however, this consider-

ation is not improper.[3] Because the jury note that appellant emphasizes in his argument does not show that anything improper occurred during jury deliberations, appellant's argument has no merit.

3. There are many cases, such as the instant case, in which a jury in a non-capital case sent out a note that seems to be directed toward learning when a life-sentenced defendant would be eligible for release on parole. *See* Tex.Code Crim. Pro. art 37.07, § 4(a), Tex. Code Crim. Pro. art 37.071, § 2(e)(2). *See, e.g., Mason v. State*, 2003 WL 1237947, at *7 (Tex. App.-San Antonio Mar. 19, 2003, pet. ref'd) (stating that jury note asked how much time is served on a life sentence and a sentence for 75 years); *Simmons v. State*, 100 S.W.3d 484, 496 (Tex.App.-Texarkana 2003, pet. ref'd) (stating jury sent out note asking about the difference between life and ninety-nine year sentences); *Perez v. State*, 994 S.W.2d 233, 236 (Tex.App.-Waco 1999, no pet.) (stating that jury asked for a definition of life imprisonment); *Nixon v. State*, 940 S.W.2d 687, 691 (Tex.App.-El Paso 1996, pet. ref'd) (stating that jury sent out note asking what parole eligibility would be for a life-sentenced defendant). The reason for this frequent inquiry may be that the article 37.07, section 4(a) instructions do not make clear how much time a life-sentenced defendant must serve before being eligible for parole. *See* Tex Code Crim. Pro. art 37.07, § 4(a).