

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00136-CR

_____

JESSIE RUIZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal Judicial District Court #4
Dallas County, Texas
Trial Court No. F07-23594-K

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Jessie Ruiz was tried on six charges arising from two separate encounters with law enforcement officers, was convicted of all six charges (including this one, a charge of possession of between four grams and 200 grams of methamphetamine with the intent to deliver, for which he received a sentence of twenty years' and four months' imprisonment),[1] and has appealed each of those convictions. The basis for each of his complaints rests upon a claim that he received ineffective assistance of counsel.[2] Ruiz's allegations arise over the lack of any objection by his trial counsel when the State made three separate comments during closing arguments. We disagree, hold that Ruiz failed to show that he received ineffective assistance of counsel, and affirm all six convictions.

---

[1]In cause numbers 06-08-00137-CR, 06-08-00138-CR, and 06-08-00139-CR, he appeals convictions for possession of marihuana in an amount between four ounces and five pounds, possession of less than one gram of cocaine, and evading arrest, respectively. In these three cases, Ruiz was sentenced to two years' imprisonment in a state-jail facility, to run concurrently. Ruiz also appeals his conviction in cause number 06-08-00140-CR of possession of methamphetamine in an amount between one and four grams. Ruiz was sentenced in this case to five years' imprisonment, to run concurrently. Finally, in cause number 06-08-00141-CR, Ruiz was convicted of attempting to take a weapon from a police officer, for which he received two years' imprisonment in a state-jail facility, to run concurrently, and was assessed a $2,000.00 fine.

[2]The conviction having been in Dallas County, this case was originally appealed to the Fifth Court of Appeals and was then transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Fifth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

## I.    Factual Background

In the first encounter, during the early morning hours of March 10, 2007, Ruiz slammed a car into a signal light pole, knocking it to the ground, damaging the car sufficiently that it was rendered "not drivable [sic]." The investigating officer discovered that Ruiz had no proof of liability insurance and purposed to impound the vehicle. A routine inventory of the automobile incident to its impoundment found it to contain seventy-eight grams of methamphetamine, two bags containing marihuana, crack cocaine, scales used to weigh drugs, a realistic-looking plastic BB gun, a used syringe, small plastic bags, and other assorted drug paraphernalia. After this discovery, Ruiz was promptly arrested and indicted on several counts as a result of this incident, including: 1) possession of methamphetamine in an amount more than four grams but less than 200 grams with intent to distribute; 2) possession of marihuana in an amount over four ounces but less than five pounds; and 3) possession of less than one gram of cocaine. In due course, Ruiz was released from jail.

More troubles with the operation of a motor vehicle precipitated Ruiz's next police encounter. At two in the morning on July 10, 2007 (while the cases arising from the first incident were still pending trial), another Dallas police officer, T. W. McClure, observed a red Ford pickup truck driving on the wrong side of the road. McClure switched on his red and blue lights and stopped the truck, driven by Ruiz. McClure approached the truck and asked Ruiz to produce his driver's license for inspection, but a nervous Ruiz failed to respond to the request. As McClure asked him to step out of the truck and reached to open the door, Ruiz accelerated and sped away. McClure ran back

3

to his patrol car and chased, with sirens blaring, after Ruiz. During the ensuing chase, Ruiz proceeded against the flow of traffic on a one-way street; per Dallas police policy, McClure terminated the chase rather than follow.

Forty minutes later, McClure caught sight of the truck again and resumed his pursuit, initiating a fifteen-minute high-speed chase (during which McClure estimated the speed of the truck at ninety miles per hour on main roads and sixty to seventy miles per hour through residential areas). Two other patrol cars (one driven by Officer M. L. St. Clair and another driven by Officer K. D. Tyler) joined the chase. As is typical of many high-speed police chases, Ruiz lost control of the truck, driving it into a tree. Ruiz then jumped out of the truck and continued his flight on foot through the residential area in which he was then located. St. Clair, following on foot, tackled Ruiz to the ground and the two began to wrestle.

Ruiz swung his arms at St. Clair and struck him in the chest. St. Clair got on top of Ruiz and administered a level one lateral vascular neck restraint. As St. Clair was attempting to secure a level two restraint,[3] he felt a tug on his right side and saw that Ruiz had grasped his pistol and holster. St. Clair screamed for assistance and instinctively rolled on his side to prevent Ruiz from gaining

---

[3]With a level one (or clinical) restraint, pressure is applied to both sides of the neck with the trachea and throat being protected in the crook of the elbow. Pressure is applied by squeezing the forearm and bicep together, while pressing in and down on the elbow. No pressure is directed to the throat, and the subject can still breathe and speak with only minimal discomfort. With a level two (or locked) restraint, the pressure application is identical, but this restraint is locked into position with the subject's second arm. By locking a vascular restraint into position, it prevents the restraint from sliding into a respiratory restraint (bar-arm choke hold), which is common during an actual physical struggle. http://www.brazilianjiujitsugear.com/forums/showthread. php?t=5201.

4

full access to the pistol. Tyler ran to the wrestling match and struck Ruiz on his head twice with his flashlight, whereupon Ruiz released his grasp on the pistol, but continued to resist and even grabbed St. Clair's pepper spray. The two officers could not restrain Ruiz by themselves.

Finally, McClure arrived at the scene of the brawl and administered pepper spray in Ruiz's face. This enabled the three officers to gain control of Ruiz and place him in handcuffs. As they were escorting Ruiz to a patrol car, a crowd (apparently consisting of family or friends of Ruiz) became unruly and screamed at the police officers. The crowd was controlled, Ruiz was placed in the back of a patrol car, and the officers conducted a search of the truck Ruiz had been driving. The search revealed methamphetamine.

As a result of this second incident, Ruiz was charged with evading arrest, possession of between one and four grams of methamphetamine, and attempt to take a weapon from a police officer. The charges from the March 10 and July 10 incidents were combined and Ruiz entered a plea of guilty to all six counts, with punishment to be decided by a jury.

Ruiz complains that his counsel was ineffective because he failed to object to certain statements made by the State during jury argument at punishment; those statements discussed parole, referenced plea bargains, and allegedly introduced new evidence.

## II. Standard of Review

Any allegation of ineffectiveness must be firmly founded in the record. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim.

App. 1999). From the record received by this Court, Ruiz bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *See Goodspeed*, 187 S.W.3d at 392; *Thompson*, 9 S.W.3d at 813; *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984). We apply the two-pronged *Strickland* test handed down by the United States Supreme Court to determine whether Ruiz received ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). Failure to satisfy either prong of the *Strickland* test is fatal. *Jaubert v. State*, 74 S.W.3d 1, 9 n.2 (Tex. Crim. App. 2002). Thus, if one of the prongs of the *Strickland* test cannot be met, we need not examine the other. *Strickland*, 466 U.S. at 697.

Ruiz must first show counsel's performance fell below an objective standard of reasonableness when considering prevailing professional norms. *Id.* at 687–88. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Sanchez v. State*, No. 07-06-0435-CR, 2008 Tex. App. LEXIS 4363, at *3 (Tex. App.—Amarillo June 13, 2008, no pet.) (mem. op., not designated for publication). Our review of counsel's performance is highly deferential. *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *White*, 160 S.W.3d at 51; *Tong*, 25 S.W.3d at 712. Therefore, we will not second guess the strategy of counsel at trial through hindsight. *Blott v. State*, 588 S.W.2d

6

588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd). Where the record is silent as to why counsel failed to make an objection or take certain actions, we will assume it was due to any strategic motivation that can be imagined, and the appellant will have failed to rebut the presumption that trial counsel's actions were in some way reasonable. *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *Garcia v. State*, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001); *Fox v. State*, 175 S.W.3d 475, 485–86 (Tex. App.—Texarkana 2005, pet. ref'd). In other words, we will not conclude the challenged conduct deficient unless it was so outrageous that no competent attorney would have engaged in it. *Thompson*, 9 S.W.3d at 808; *Fox*, 175 S.W.3d at 485–86.

Next, it is not enough for Ruiz to show that the errors had some conceivable effect on the outcome of the proceeding. *See Strickland*, 466 U.S. at 693. To meet the second prong of the *Strickland* test, Ruiz must show that the deficient performance damaged his defense to such a degree that there is a reasonable probability the result or outcome of the trial would have been different. *Id.*; *Tong*, 25 S.W.3d at 712. We evaluate this factor while taking into consideration the totality of representation and the particular circumstances of this case. *Thompson*, 9 S.W.3d at 813; *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991).

**III.    Application**

**A.    The State's Argument Regarding Parole Was Proper**

In accord with Article 37.07 of the Texas Code of Criminal Procedure, the trial court's

punishment charge stated:

> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.
>
> . . . if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-fourth of the sentence imposed or 15 years, whichever is less, without any consideration of any good conduct time []he may earn.
>
> . . . .
>
> You may consider the existence of the parole law and good conduct time.  However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant.  You are not to consider the manner in which the parole law may be applied to this particular defendant.

*See Byrd v. State*, 192 S.W.3d 69, 71 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

Ruiz complains that the State made an improper jury argument regarding parole when

arguing the following:

> A couple of things I would like to point out to you.  On the two larger cases, the 2 to 10 and the 5 to 99 or life, the Judge read you a portion about parole.  What you get to know about those two cases is those two cases, a person becomes eligible for parole after serving one-quarter of their time or 15 years, whichever is less.  Okay?
>
> So let's take, for example, somebody gets 20 years.  A quarter time is 5.  It's less than the 15, so they're eligible for parole in 5.  That includes good time.  All right?  Make sense?

8

> Now, let's say somebody got 70. Quarter time of that is 17 and a half. 15 is less than 17 and a half, so they would become eligible in 15. What the law says is you can't go back and say, Hey, let's give somebody 50 because they're going to be eligible in a quarter time. Can't do that. But the law does say you can be aware of that for your deliberations. Okay?

The State may explain the parole law's existence. *Taylor v. State*, 233 S.W.3d 356, 358 (Tex. Crim. App. 2007); *see also Taylor v. State*, 911 S.W.2d 906, 911–12 (Tex. App.—Fort Worth 1995, pet. ref'd) (State's jury argument that "if a person is sentenced to 20 years . . . then they become eligible to be considered for release on parole after one quarter, which is five" merely discussed the trial court's charge and was proper). This issue has been decided by the Texas Court of Criminal Appeals and by this Court. *Taylor*, 233 S.W.3d at 358; *Johnson v. State*, No. 06-04-00038-CR, 2004 Tex. App. LEXIS 11106, at *2–3 (Tex. App.—Texarkana Dec. 10, 2004, no pet.) (not designated for publication) (holding counsel's failure to object to State's argument regarding parole law not ineffective assistance of counsel).

In *Taylor*, the trial court's jury charge tracked the parole language employed by the trial court in this case. 233 S.W.3d at 358. During closing argument, the State argued, "A 40-year sentence means the defendant becomes eligible for parole after serving 20 years. . . . A 60-year sentence means he becomes eligible after serving 30 years. A sentence of life or 75 still means he becomes eligible after 30 years." *Id.* The Texas Court of Criminal Appeals held this argument was proper because the State "did not convey any information beyond what was properly contained in the charge

9

when he explained how the parole eligibility rules set out in the charge worked with forty, sixty and seventy-five year sentences." *Id.* at 359.

In *Sanchez*, the defendant complained that the State's argument that the jury would "see that the only protection of the community that you can be assured of would be half of whatever you send him," and the State's calculation if "you send him for 40 years, he would only be there for 20," was an "attempt to inappropriately apply the parole law" to the defendant. 2008 Tex. App. LEXIS 4363, at *6. The Amarillo Court of Appeals held defendant's counsel was not ineffective in failing to object because the State committed no error since the language regarding parole during jury argument merely tracked the trial court's jury charge. *Id.* at *6–7.

Here, as in *Taylor* and *Sanchez*, the State merely tracked the language in the jury charge and explained the application of the parole formula in general terms. As such, no error was committed.

Ruiz's first point of error is overruled.

## B.     Plea Bargain

Unless clearly invited by defense counsel or introduced as evidence by the defense, attempts at plea bargaining should never be alluded to in argument by prosecutors. *Clayton v. State*, 502 S.W.2d 755, 757 (Tex. Crim. App. 1973). During jury argument, the State said, "You know, sometimes the reality is that the State and the defendant can't agree on a plea bargain. That's why we have the 12 of you."[4]

---

[4]In most plea bargain negotiations, one of the issues involves whether the defendant would enter a guilty plea. In such a circumstance, if a jury heard mention of plea negotiations, it might infer

Even assuming arguendo that this argument constituted error, declining to object to a portion of the State's argument is often an inherently tactical decision based on the way the trial is unfolding and the trial strategy employed. *Taylor v. State*, 947 S.W.2d 698, 704 (Tex. App.—Fort Worth 1997, pet. ref'd). Counsel could have made a tactical decision not to draw attention to, or re-enforce the State's argument in front of the jury. Absent a record stating the reasons for counsel's failure to object, we will not second guess counsel through hindsight. Claims of ineffective assistance of counsel are often best developed through motions for new trial. *Thompson*, 9 S.W.3d at 814. We have no such evidence as might have been developed at such a hearing here. Further, Ruiz failed to brief or otherwise demonstrate how counsel's failure to object to this singular statement would have resulted in a different outcome. Therefore, since Ruiz failed to meet either prong of the *Strickland* test, this point of error is overruled.

### C.    No New Evidence Was Interjected During the State's Closing Argument

Finally, Ruiz contends the following jury argument interjected new evidence:

> So I submit to you these incidents, state jails, third degrees, one first degree case, this is nothing to be looked at individually because they were not done by separate individuals. They were done by one person, Mr. Ruiz. I submit to you that you look at everything that he's done and you take that and you look at it and you say, where does he fall between that 5 or the low end to 99 years or life on the high end? Do we take off five years because he did not get the weapon? Do we take off five years because he was not able to take the pepper spray from the officer? Do we take off five years because he was not able to successfully force Officer St. Clair off his

---

that the defendant would have entered a plea of guilty if promised a light sentence. However, the potential impact of a statement such as this is substantially reduced when, as here, a plea of guilty is entered, rendering the sole negotiation point as being the penalty to be assessed.

back? Do we take off five years because he did not have a car wreck and hurt somebody in the community on the streets? Do we take off five years because he was able to not harm any others on the street? Or do we take off five years because not only did he not take out -- he took out a traffic stop, but he hit -- didn't hit parked cars he swerved around.

Areas of proper jury argument include summation of the evidence presented at trial, answer to argument made by opposing counsel, or plea for law enforcement. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000); *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). A "jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence to constitute reversible error." *Gaddis*, 753 S.W.2d at 398.

We reject Ruiz's theory that the jury argument above interjected new evidence which had not been presented. It does no more than summarize some of the evidence elicited by officers during the trial, evidence which established that although he tried, Ruiz was unable to gain control of St. Clair's weapon or pepper spray, that Ruiz was eventually controlled by the officers, that no one was physically harmed during either the March 10 or the July 10 incidents, and that he did not collide with any other vehicles during either incident. Additionally, we believe that the argument was merely a plea for law enforcement. Because the State's argument was proper, counsel was not required to object. Therefore, the failure of Ruiz's counsel to object to this argument did not deny him the effective assistance of counsel.

**IV. Conclusion**

We hold that Ruiz's counsel was not required to object to the State's proper references to parole and its plea for law enforcement. Ruiz also failed to meet his burden to prove that he was prejudiced by virtue of his counsel's failure to object to the State's reference to plea bargaining. Accordingly, we find that Ruiz failed to show that he was denied the effective assistance of counsel during the punishment trial.

We affirm the judgment.


Bailey C. Moseley
Justice


Date Submitted:     January 5, 2009
Date Decided:       January 8, 2009

Do Not Publish


13