# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00347-CR

**Donna Marie Pryor, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2012-208, HONORABLE JACK ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Donna Marie Pryor guilty of driving while intoxicated with two previous similar convictions, a third-degree felony. *See* Tex. Penal Code §§ 49.04, .09(b)(2). After finding that Pryor had previously been convicted of three additional felonies, the jury assessed punishment at 99 years' imprisonment, and the trial court rendered judgment on the jury's verdict. *See id.* § 12.42(d). In her first point of error, Pryor contends that the trial court erred by failing to submit a jury instruction pursuant to Texas Code of Criminal Procedure article 38.23. In her second point of error, Pryor argues that the trial court erred by overruling her objections to portions of the State's closing argument. We will affirm the trial court's judgment of conviction.

## DISCUSSION

*Article 38.23*

At trial, a deputy with the Comal County Sheriff's Office testified concerning the traffic stop that led to Pryor's arrest. According to the deputy, he stopped Pryor after observing her make a turn without signaling for at least 100 feet before turning, a violation of law. *See* Tex. Transp. Code § 545.104(b). The deputy further testified that he administered standardized field sobriety tests, determined that Pryor was intoxicated, and arrested her. The State also produced a video of the encounter recorded by the deputy's in-car camera, which the trial court admitted.

At the charge conference, Pryor requested that the trial court submit an instruction to the jury pursuant to article 38.23, which states,

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex. Code Crim. Proc. art. 38.23(a). The trial court denied Pryor's request.

In her first point of error, Pryor contends that the trial court erred by denying her request for an instruction under article 38.23 because the State's video was evidence that would have allowed the jury to determine, contrary to the deputy's testimony, that Pryor did not violate the law by failing to signal at least 100 feet before turning. We understand Pryor to be arguing

2

that if she did not violate the law, then it was illegal for the officer to pull her over. If the traffic stop was illegal, article 38.23 would have required the jury to disregard all of the evidence of Pryor's intoxication gathered after the stop. And if that evidence had been excluded, there would be insufficient evidence to support her conviction.

A defendant must meet three requirements for the trial court to submit an instruction pursuant to article 38.23: "(1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct." *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008) (citing *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007)). Here, the only two pieces of evidence relevant to Pryor's alleged failure to properly signal were the deputy's testimony and the video. *See id.* ("This factual dispute can be raised only by affirmative evidence, not by mere cross-examination questions or argument."). Thus, the issue before this Court is whether the trial court erred in concluding that the video did not affirmatively contest the deputy's testimony concerning Pryor's alleged failure to properly signal as it relates to the lawfulness of the traffic stop.

Although Pryor argues that the video raises a fact question as to whether she signaled at least 100 feet before turning, the material question is whether the deputy had reasonable suspicion that she had violated the law. *See Madden*, 242 S.W.3d at 516 ("The real factual issue is whether Trooper Lily reasonably believed that appellant was acting in a nervous manner, not whether the videotape *shows* appellant acting in a nervous manner."); *see also State v. Duran*, 396 S.W.3d 563, 568 (Tex. Crim. App. 2013) ("An officer must have reasonable suspicion that some crime was, or is about to be, committed before he may make a traffic stop."). Having reviewed the video, we

3

conclude that the video does not clearly show that it was unreasonable for the deputy to suspect that Pryor had violated the law by failing to signal for at least 100 feet before turning.[1]  The video shows Pryor activate her turn signal, move forward a bit, stop at a traffic light, and then turn left. But the video does not indicate precise distances, nor does it show Pryor signaling so far in advance that it would have been unreasonable for the officer to believe she had violated the law.  Therefore, Pryor has not demonstrated that evidence presented at trial affirmatively contested the deputy's testimony.  As a result, the trial court did not err in not submitting an instruction under article 38.23. Accordingly, we overrule Pryor's first point of error.[2]

### Jury argument

In her second point of error, Pryor argues that certain comments the prosecutor made during closing argument at the punishment phase of trial were improper because they encouraged the jury to consider parole law in calculating Pryor's sentence.

---

[1] This case is distinguishable from *Mills v. State*, in which this Court held that the district court erred in refusing the defendant's request for an instruction under article 38.23. *See Mills v. State*, 296 S.W.3d 843, 848–49 (Tex. App.—Austin 2009, pet. ref'd).  In *Mills*, unlike in this case, the officer who testified that the defendant failed to signal for at least 100 feet before the turn acknowledged on cross-examination that obstacles may have obstructed his view.  *See id.* at 847–48. This Court concluded that the officer's testimony, combined with video evidence, raised a material question of fact.  *See id.* at 848.  Here, however, there was no such equivocation in the officer's testimony.

[2] Pending before this Court is Pryor's motion requesting that we take judicial notice of an aerial photograph allegedly depicting the intersection at issue in this case.  We conclude that this photograph is not relevant to a determination of whether the evidence admitted at trial raised a fact question concerning reasonable suspicion.  Accordingly, we deny the motion. *See Watkins v. State*, 245 S.W.3d 444, 456 (Tex. Crim. App. 2008) ("[T]he question of whether an appellate court should take judicial notice of an adjudicative fact when the underlying data or materials in support of that notice are presented for the first time in that court should be a matter of the appellate court's discretion, never mandatory.").

During the State's closing argument, the following exchange occurred:

[Prosecutor:] If you look—so to explain how that works, if you sentence the defendant to 1000 years, a quarter of 1000 years is 250. 15 is less. So if you give somebody 1000 years, 15 years you can get paroled. If you give somebody life, 15 years they can get parole.

And I think that's important for you to know because if it really meant life, maybe that would seem harsh, but it ain't what it means. If you don't believe it, you heard the parole officer here testify she was able to parole in six years on—

[Defense counsel:] Objection; improper argument, Judge.

[Trial court:] Overruled, Counsel.

[Prosecutor:] She was eligible for parole in eight months on a six year sentence. That's how fast you can turn somebody out on this kind of thing.

Part of that is the fact that the law also provides that you can get good conduct time on that sentence. So for every day that you are in, they can give you a day of good conduct. So it isn't 15 years, it is seven and a half, because once you get an extra day for every day you are in, it cuts it in half. So a life sentence, seven and a half years you can get out.

And what that tells you at the end of the day—

[Defense counsel:] Objection, improper argument, Your Honor.

[Trial court:] Overruled.

*****

[Prosecutor:] Giving somebody a life sentence, they can be back out on the road in about seven and a half years. And the other thing you need to know is that all the time somebody is in jail prior to this day they get credit for it, so that comes off the seven and a half years.

So I know when I talked the other day in voir dire, some people thought it sounded harsh, the range of punishment. That's their right to feel that way, but at the end of the day it doesn't mean that.

5

In Texas we like to talk tough on crime and every two years the legislature meets and they make up a first degree felony and talk about how they get life imprisonment—

[Defense counsel:] Objection; improper argument, Your Honor.

[Trial court:] Overruled.

[Prosecutor:] They get their name in the newspaper. What they don't tell you is they create parole boards that create all these fancy parole laws. My wife calls it dog years. Basically what it is.

It is a sad commentary on our system that we set it up in such a way, because it doesn't mean what it tells you.

We review a trial court's ruling on an objection to improper jury argument for an abuse of discretion. *Nzewi v. State*, 359 S.W.3d 829, 841 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (citing *Davis v. State*, 329 S.W.3d 798, 825 (Tex. Crim. App. 2010)). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App.1990). "[P]roper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008).

As required by statute, the trial court instructed the jury that it could "consider the existence of the parole law and good conduct time" but could not "consider the manner in which the parole law may be applied to this particular defendant." *See* Tex. Code Crim. Proc. art. 37.07, § 4(b).[3]

---

[3] Article 37.07, section 4(b) governed the jury charge in this case because the offense was punishable under the habitual offender provision of the penal code because two prior sequential felony convictions were alleged for enhancement under Texas Penal Code section 12.42(d).

We have interpreted these instructions to allow the jury to consider the defendant's eligibility for parole but not whether or when the defendant will actually be released on parole. *Branch v. State*, 335 S.W.3d 893, 907 (Tex. App.—Austin 2011, pet. ref'd) ("Branch contends that the prosecutor's statements were improper. We agree . . . . Here, the prosecutor did not state that Branch would be *eligible* for parole in a certain number of years, but rather stated that Branch would be *out of prison* in that amount of time."); *see Taylor v. State*, 233 S.W.3d 356, 360 (Tex. Crim. App. 2007) (Womack, J., concurring) ("'[T]he jury may base its assessment of punishment in part on consideration of a sentenced defendant's parole eligibility under the formula contained in the instruction; however, a jury may not base its assessment of punishment on speculation as to when, if ever, the defendant may be released on parole after becoming eligible for parole.'") (quoting *Byrd v. State*, 192 S.W.3d 69, 77 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (Frost, J., concurring)); *Waters v. State*, 330 S.W.3d 368, 373–74 (Tex. App.—Fort Worth 2010, pet. ref'd) (adopting Judge Womack's concurrence). A prosecutor may properly discuss parole eligibility during jury argument as long as he or she is merely explaining and clarifying the jury charge. *See Taylor*, 233 S.W.3d at 359; *Branch*, 335 S.W.3d at 907 (noting that "the State may attempt to clarify the meaning of the jury instructions pertaining to parole law and good-conduct time"); *see also Hawkins v. State*, 135 S.W.3d 72, 84 (Tex. Crim. App. 2004) ("It was not improper for the prosecutor to accurately restate the law given in the jury charge nor was it improper for the prosecutor to ask the jury to take the existence of that law into account when assessing punishment.").

We conclude that the prosecutor's argument was improper because it went beyond merely explaining the jury charge and instead urged the jury to consider when Pryor might actually

be released on parole. *See Hardin v. State*, No. 03-14-00236-CR, 2015 WL 1514483, at *3 (Tex. App.—Austin Mar. 25, 2015, no. pet. h.) ("Here, the prosecutor implicitly asked the jury to consider not only when Hardin would become *eligible* for parole but also when Hardin might *actually be released* on parole.") (citing *Branch*, 335 S.W.3d at 907). The prosecutor argued to the jury, "[Y]ou heard the parole officer here testify [Pryor] was able to parole in six years . . . ." A prosecutor may not use evidence of a defendant's prior release on parole to argue that the defendant would actually be paroled before she had served the entire sentence assessed by the jury. *See id.*; *see also Clark v. State*, 643 S.W.2d 723, 725 (Tex. Crim. App. 1982) ("Although the State is correct in noting that the prison records were in evidence, the records were introduced solely for the purpose of establishing appellant's prior record. The records were not and could not be introduced for the purpose of showing the jury how the parole laws operate . . . .") Moreover, although the prosecutor never unequivocally assured the jury that Pryor would be released before serving her entire sentence, the prosecutor did use language that was filled with certainty and was not in tune with the trial court's instruction that "[i]t cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if sentenced to a term of imprisonment." *See* Tex. Code Crim. Proc. art. 37.07 § 4(b). For example, the prosecutor stated, "So it isn't 15 years, it is seven and a half, because once you get an extra day for every day you are in, it cuts it in half. So a life sentence, seven and a half years you can get out." The prosecutor also stated, "Giving somebody a life sentence, they can be back out on the road in about seven and a half years." On several occasions, the prosecutor stated or implied that the sentence assessed by the jury would not be the sentence that Pryor actually served. Such argument is improper.

Having concluded that the prosecutor's comments were improper, we now consider whether those comments constitute reversible error. Pryor argues that we should apply the harm analysis from *Almanza v. State*, in which the degree of harm required for reversal depends on whether the appellant preserved error. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). However, *Almanza* applies when reviewing errors in the jury charge, not errors regarding jury argument. *See Kuhn v. State*, 393 S.W.3d 519, 524 (Tex. App.—Austin 2013, pet. ref'd) ("We review claims of jury charge error under the two-pronged test set out in *Almanza* . . . ."); *Vitello v. State*, No. 01-03-00669-CR, 2004 WL 1119948, at *5 (Tex. App.—Houston [1st Dist.] May 20, 2004, pet. ref'd) (mem. op., not designated for publication) ("*Almanza* has not been extended to claims of jury-argument error."). Contrary to Pryor's assertions, the improper use of parole law during jury argument is non-constitutional error that "must be disregarded" if it "does not affect substantial rights." Tex. R. App. P. 44.2(b); *Perez v. State*, 994 S.W.2d 233, 237 (Tex. App.—Waco 1999, no pet.); *see Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000) ("[M]ost comments that fall outside the areas of permissible argument will be considered to be error of the nonconstitutional variety."). To determine whether the defendant's substantial rights were affected, "[w]e balance three factors: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of the punishment assessed absent the misconduct (likelihood of the same punishment being assessed)." *Hawkins*, 135 S.W.3d at 77; *see also Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (listing three harm-analysis factors); *Perez*, 994 S.W.2d at 237–38 (applying *Mosley* factors).

We conclude that the error the trial court committed in overruling Pryor's objections did not affect Pryor's substantial rights. Under the first *Mosley* factor, the severity of the misconduct,

9

we note that the prosecutor's discussion of parole was both extended and vitriolic. The prosecutor insulted the Texas Legislature and criticized the State's criminal justice system for saying one thing but meaning another when addressing being "tough on crime." The clear implication was that the jury's only hope of preventing a flawed system from releasing Pryor in a mere seven-and-a-half years was to assess the maximum sentence (as, indeed, the jury did in this case). This factor weighs in favor of a finding of harm.

Under the second factor, curative measures, the trial court overruled Pryor's objections and gave no limiting instruction to the jury. The only curative measure appearing in the record was the trial court's instructions to the jury on punishment, which accurately quoted the language on parole law mandated by Texas Code of Criminal Procedure article 37.07, section 4(b). We generally presume that a jury will follow the trial court's instructions. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009).

We determine that the third factor, the certainty of the punishment assessed, is dispositive in this case. The State introduced evidence that Pryor had previously been convicted at least five times for DWI. In addition, there was evidence that Pryor's driving on the occasion under consideration was so dangerous that a concerned citizen had reported her to law enforcement. Moreover, Pryor's own father testified at the punishment phase of trial that Pryor has struggled with alcohol for many years and that "[i]t is a lifetime struggle." He also testified that he has tried everything he could to get her to quit drinking and driving and that it has not worked. Pryor's father additionally testified that he was worried that his daughter would eventually kill herself while driving drunk and that on a prior occasion she ran off into a ditch because she was driving while intoxicated.

10

Finally, the State presented evidence that Pryor was required to have an interlock device on her vehicle as a condition of parole in a previous DWI case and that the condition was still in effect when she was arrested for the offense in this case. In light of all of this uncontroverted evidence, the jury would likely have concluded that Pryor is unable or unwilling to change her behavior and assessed the maximum sentence, even without the prosecutor's comments on parole law.

Balancing these three factors, we conclude that the trial court's decision to overrule Pryor's objections to the prosecutor's comments did not affect Pryor's substantial rights. We therefore overrule Pryor's second point of error.

## CONCLUSION

Having overruled both of Pryor's points of error, we affirm the judgment of conviction.

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed: May 1, 2015

Do Not Publish

11