Carlton Akee **TURNER**, Appellant,

v.

**The STATE of Texas.**

No. 73559.

Court of Criminal Appeals of Texas.

Sept. 11, 2002.

---

Adam L. Seidel, Dallas, for Appellant.

Patricia Poppoff Noble, Assistant District Attorney, Dallas, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, KEASLER, HOLCOMB and COCHRAN, JJ., joined.

A jury convicted appellant of capital murder. The trial court sentenced appellant to death pursuant to the jury's answers to the special issues submitted at the punishment phase. Appellant raises fourteen points of error in his automatic direct appeal to this Court. We affirm.

The 19–year–old appellant shot and killed his parents in their home and put their bodies in the garage. After this, appellant went shopping with his parents' cash and credit cards. Appellant testified at trial that he shot his father in self-defense. This self-defense theory contradicted appellant's pretrial statements in newspaper and television interviews that he had nothing to do with the murders. Appellant offered no explanation at trial for killing his mother. He testified that he felt nothing when he killed his parents. Appellant has a long history of violence and other inappropriate behavior. Appellant claimed that a history of parental abuse largely explains his violent behavior. The trial court submitted a parole law jury instruction which, among other things, instructed the jury that a life-sentenced appellant would not be eligible for parole for 40 years.

In points of error one and two, appellant claims that his trial counsel was ineffective for not objecting to the prosecution's voir dire comments to several veniremembers and eventual jurors that the jury could not consider a life-sentenced appellant's parole eligibility because of possible future legislative changes to the parole laws. In point of error three appellant claims that these prosecutorial comments were also "fundamental error" because they denied him a fair punishment hearing under the Eighth and Fourteenth Amendments.

The record reflects that appellant committed this offense before September 1, 1999, so he was not entitled to the parole law jury instruction currently mandated by Article 37.071, Section 2(e)(2)(B), or to any other judicially-crafted parole law jury instruction. *See* Section 2 of Acts 1999, 76th Leg., ch. 140; *Smith v. State*, 898 S.W.2d 838, 846–53 (Tex.Cr.App.), *cert. denied,* 516 U.S. 843, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995). The record, however, also reflects that neither party objected to this instruction in the charge.

The voir dire examination of veniremembers and eventual jurors Brown, Davidson and Graver typifies the prosecution's voir dire comments that appellant

now finds objectionable. The prosecution told Brown:

> [PROSECUTION]: Finally, let's talk about parole for just a minute. Remember, I told you; I think the Judge has too, in a capital murder case with the guilty verdict, there is only two possible verdicts, either life or death, and now in the State of Texas if the person gets a life sentence for capital murder, the law says he has to serve forty calendar years before he becomes eligible for parole. That means, as the law is right now, and of course, parole laws are always subject to change, but as they are right now, that means you have got to serve forty calendar years, day for day; no hope of ever getting out at the end of that forty-year period; then you start becoming eligible for parole, but not before then. Now let me tell you the instruction that you get in this case as a juror. Judge Greene would instruct you if you find this man guilty of capital murder, that you are not to consider parole for any purpose, whatsoever. Just like the failure to testify, you just say, that doesn't matter to me. Why, because, see, parole is not for you to decide. It's a matter that is solely within the discretion of the Board of Pardons and Paroles, and the law is subject to change also.
>
> What a life sentence means today, well, it's been different in the past; it may be different in the future. For that reason, here is what I tell jurors: When you see a life sentence mentioned in this case, just take it to mean life. That is it, day for day, rest of his life. Just think of it that way.
>
> In this case, if you got an instruction not to consider parole, can you follow that instruction also?

The prosecution told Davidson:

> [PROSECUTION]: Now, one other thing in this case, let's talk about parole for just a minute. I can tell you this: The Judge has told you there is only two possible sentences for capital murder. It's either a life sentence or a death sentence. In Texas, if a person is convicted of a capital murder and they receive a life sentence, that means they have to serve at least forty calendar years, day for day, before they become eligible for parole; so, they serve forty calendar years, and then, then they would, at least, become eligible for parole; not to say that they would be paroled, but that is the very first time that they could be considered for parole.
>
> And, of course, parole laws change from year to year; I mean, I have been down here, and I have seen them change dramatically, I think three or four times, you know, in my career; so, there is nothing to say they are going to stay the same next year or five years from now.
>
> If you are a Member of the Jury in this case, Ms. Davidson, you would be instructed by Judge Greene that you were not to consider parole in determining what verdict that you are going to reach on punishment. Okay. Again, it's just like the Defendant not testifying. You go back in there, you know; it would be improper, for instance, to be thinking, well, you know, if I give this man a life sentence, he'll serve forty years or life means forty years. Just forget about that.
>
> I tell jurors to do this. That if you see a life sentence in this case, just consider it to be just that, life, period, and forget about trying to guess when he's going to get out of the penitentiary because, see, parole is not up to you and me. It's up to the Board of Pardons and Paroles in Austin. They have got complete control of that. For us to be thinking about it,

really, is meaningless; so, in this case, if you got that kind of instruction, could you agree that you would not consider parole during your deliberations?

A. The time of parole?

Q. Yes, ma'am.

And, the prosecution told Graver:

[PROSECUTION]: Here is another issue that sometimes comes up in a case such as this one, and it would be the issue of parole. In Texas, if an individual is convicted of capital murder, there is only two possible sentences. They are either going to get a life sentence or they get the death sentence. That is it. If a person is convicted of capital murder and receives a life sentence, that person will have to serve at least forty calendar years before he becomes eligible for parole. That means he's staying in there at least forty years. At the end of that forty year period, he may come up for parole. He may not, but he has got to do at least forty years. The law in this case would be this: If you are selected as a juror in this case and we got to the punishment phase, Judge Greene would instruct you that you are not to consider parole for any purpose, whatsoever. Don't be speculating or thinking on how quickly someone may be out on a life sentence because, you see, two things: Parole laws change. I have seen them change two or three times in my career, and they may change next year, five years, ten years from now; so, what is a life sentence today may not be the same five or ten years from now. Secondly, whether or not someone receives parole is not up to us. It's up to the Board of Pardons and Paroles in Austin. For that reason, jurors really don't have anything to do with that. In this case, if you were selected as a juror, could you assure me that you would not consider parole for any pur-

pose? Don't be thinking about it. Wouldn't be speculating or thinking about how quickly someone may get out on a life sentence?

Appellant claims that the prosecution's comments contradicted the parole law jury instruction by informing the veniremembers that the jury could not consider a life-sentenced appellant's parole eligibility because of possible future legislative changes to the parole laws. Appellant claims that these comments should be reviewed pursuant to our unpublished decision on original submission in *Burton v. State,* slip op. at 5–11 (Tex.Cr.App. No. 73,204, delivered October 25, 2000) (unpublished). That opinion was withdrawn on rehearing and replaced with another unpublished decision in *Burton v. State,* slip op. at 1 (Tex.Cr.App. No. 73,204, delivered March 7, 2001) (op. on reh'g) (unpublished) (improper for prosecution during closing jury arguments to inform the jury that a life-sentenced defendant could "walk the streets" in less time than what current law provided because of possible future legislative changes to the parole laws); *but see Smith v. State,* 898 S.W.2d at 838, 849 n. 16 (Tex.Cr.App.), cert. denied, 516 U.S. 843, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995). Unpublished decisions, however, have no precedential value. *See* Tex.R.App.Proc. 77.3.

■ The prosecution's comments also did not inform the veniremembers that the jury could not consider a life-sentenced appellant's parole eligibility because of possible future legislative changes to the parole laws or that the trial court would so instruct the jury. Viewed in the context of the entire voir dire, the prosecution's comments informed the veniremembers, consistent with current law set out in Article 37.071, Section 2(e)(2)(B), that a life sentence meant at least 40 years and that the jury should not speculate on when a life-

sentenced appellant might be released on parole when he became eligible after serving 40 years.

By plucking the prosecution's voir dire comments that the jury "should not consider parole for any purpose" out of context, it is not unreasonable for appellant to claim that this impermissibly conveyed to the jury that it could not consider a life-sentenced appellant's parole eligibility. But, viewing the entire voir dire, we find that the prosecution's comments did not convey this. For example, when the prosecution asked Davidson, "... could you agree that you would not consider parole during your deliberations," Davidson responded, "the time of parole?" This is consistent with the Article 37.071, Section 2(e)(2)(B), instruction that the jury should not consider when a life-sentenced capital murder defendant might be released on parole when that defendant becomes eligible for parole.

On this record, we cannot say that counsel was ineffective for failing to object to the prosecutor's voir dire comments since, viewed in the context of the entire voir dire, they were not objectionable. *See Strickland v. Washington,* 466 U.S. 668, 687–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Points of error one through three are overruled.

In point of error eight, appellant claims that the trial court's parole law jury instruction denied him a fair punishment hearing because it instructed the jury that it could not consider a life-sentenced appellant's parole eligibility. The record reflects that the trial court submitted a parole law jury instruction consistent with the one currently set out in Section 37.071, Section 2(e)(2)(B).

> You are instructed that under the law applicable to this case, if the defendant is sentenced to imprisonment in the Institutional Division of the Texas Depart-

ment of Criminal Justice for life, the defendant will become eligible for release on parole, but not until the actual time served by the defendant equals 40 years, without any consideration of good conduct time. It cannot accurately be predicted how the parole laws might be applied to this defendant if the defendant is sentenced to a term of imprisonment for life because the application of those laws will depend on decisions made by prison and parole authorities, but eligibility for parole does not guarantee that parole will be granted.

Immediately following this, the trial court also instructed the jury as follows.

> Therefore, during your deliberations, you are not to consider or discuss the possible action of the Board of Pardon and Paroles or of the Governor, or how long a defendant would be required to serve on a sentence of life imprisonment, or how the parole laws would be applied to this defendant. Such matters come within the exclusive jurisdiction of the Board of Pardon and Paroles and are no concern of yours.

Appellant claims that this part of the charge denied him a fair punishment hearing because it instructed the jury that it could not consider a life-sentenced appellant's parole eligibility. We agree, however, with the State that this part of the charge did not inform the jury that it could not consider a life-sentenced appellant's parole eligibility. Consistent with Article 37.071, Section 2(e)(2)(B), this part of the charge instructed the jury not to consider how long a life-sentenced appellant would serve after becoming eligible for parole.

We further note that the record is silent on how the parole law jury instruction became part of the trial court's charge. *Compare Jimenez v. State,* 32 S.W.3d 233, 238–39 (Tex.Cr.App.2000) (unobjected-to

jury charge error case), *with, Prystash v. State,* 3 S.W.3d 522, 529–31 (Tex.Cr.App. 1999), cert. denied, 529 U.S. 1102, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000) (invited jury charge error case). If the trial court submitted it at appellant's request, then appellant invited any error and he cannot now be heard to complain. *See Prystash,* 3 S.W.3d at 529–31.

█ If the trial court submitted it without objection, then appellant cannot meet the statutory "egregious harm" standard, because it is unlikely that the jury applied the instruction in a way that prevented consideration of a life-sentenced appellant's parole eligibility as a mitigating factor. *See Jimenez,* 32 S.W.3d at 238–39; *Smith,* 898 S.W.2d at 857–72 (Clinton, J, dissenting) (explaining why a life-sentenced capital murder defendant's parole eligibility could be considered mitigating); *cf. Ex parte Tennard,* 960 S.W.2d 57, 61 (Tex.Cr.App.1997), cert. denied, 524 U.S. 956, 118 S.Ct. 2376, 141 L.Ed.2d 743 (1998) (constitutional issue in cases like this, where constitutional issue is preserved, is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that prevents the consideration of constitutionally relevant mitigating evidence). Appellant made no claim before the jury that a life-sentenced appellant's parole eligibility could have been considered a mitigating factor. Also, neither party referred to the parole law during the punishment phase or during closing arguments at the punishment phase, thus the jury was not mislead during jury arguments into believing that it could not so consider a life-sentenced appellant's parole eligibility. And, for the reasons set out in our discussion of points of error one and two, the jury was not misled during voir dire.

Finally, given the evidence presented at guilt/innocence and at punishment concerning the brutality of this offense and appellant's history of violence, it is unlikely that the jury's answers to the special issues turned on any parole law considerations or any misunderstanding of the parole law. On this record, we find no "egregious harm" from any error in the parole law jury instruction. Point of error eight is overruled.

In point of error four, appellant claims that the trial court erroneously overruled his objection to the prosecution's closing argument at guilt/innocence which referred to appellant as a psychopath and a sociopath. Appellant contends that this argument encouraged the jury to disregard the trial court's self-defense jury instruction. Appellant complains of the following argument:

> Reasonable belief, when we talk about this business on self-defense, means a belief that would be held by an ordinary and prudent person in the same circumstances as [appellant]. So, when [defense counsel] tells you to get in [appellant's] head, first of all, you have to say you have to be in a place of a reasonable person. Boom, right there, that out. He's a psychopath; he's a sociopath—

█ Appellant objected to this argument as "outside the record." This trial objection does not comport with appellant's appellate claim that the prosecution's argument encouraged the jury to disregard the trial court's self-defense instruction. Appellant, therefore, has procedurally defaulted this appellate claim. *See* Tex. R.App.P. 33.1.

█ In addition, the argument informed the jury that the law required it to consider appellant's self-defense claim from the standpoint of an "ordinary and prudent person" and not from the standpoint of a "psychopath or a sociopath." This argument was proper because it did not mis-

state self-defense law and also because evidence was presented at guilt/innocence that supports a finding that appellant is a psychopath and a sociopath. Point of error four is overruled.

■ In points of error five through seven, appellant claims the trial court erroneously admitted evidence that, after killing his parents, appellant forged and cashed three checks from their checking account. Appellant claims this evidence was extraneous, irrelevant and overly prejudicial. One of the capital murder theories upon which the jury was instructed was murder in the course of a robbery. The trial court, therefore, did not abuse its discretion to admit the complained-of evidence to prove the underlying robbery offense. Points of error five through seven are overruled.

■ In point of error nine, appellant claims the trial court erred in failing to define the terms "probability," "criminal acts of violence," and "continuing threat to society" in the "future dangerousness" special issue. Because appellant did not raise these claims at trial, he has procedurally defaulted them on appeal. We have also held that the jury charge does not need to define these terms. See Chamberlain v. State, 998 S.W.2d 230, 237–38 (Tex.Cr.App.), cert. denied, 528 U.S. 1082, 120 S.Ct. 805, 145 L.Ed.2d 678 (1999). Point of error nine is overruled.

In point of error ten, appellant claims Texas death penalty law violates the Eight and Fourteenth Amendments by requiring at least ten "no" votes for the jury to return a negative answer to the "punishment special issues." We have rejected this claim. See Pondexter v. State, 942 S.W.2d 577, 586 (Tex.Cr.App.1996), cert. denied, 522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997). Point of error ten is overruled.

In points of error eleven and twelve, appellant claims Texas death penalty law violates the state and federal constitutions because it simultaneously restricts and allows unlimited juror discretion to impose the death penalty. Appellant relies on Justice Blackmun's dissenting opinion in Callins v. Collins, 510 U.S. 1141, 114 S.Ct. 1127, 1128–38, 127 L.Ed.2d 435 (1994) (Blackmun, J., dissenting), to support his argument. This Court, and the United States Supreme Court, have rejected this claim. See Chamberlain v. State, 998 S.W.2d at 238; Callins, 114 S.Ct. at 1127–28 (Scalia, J., concurring). Points of error eleven and twelve are overruled.

In points of error thirteen and fourteen, appellant claims that the cumulative effect of the above enumerated constitutional violations violates the state and federal constitutions. Having found no constitutional violations, we decide these claims are without merit. See Chamberlain, 998 S.W.2d at 238 (non-errors cannot cumulatively cause error). Points of error thirteen and fourteen are overruled.

The judgment of the trial court is affirmed.

WOMACK and JOHNSON, JJ., concurred in the result.