

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00080-CR

WILLIAM BERRY WATERS, III                                           APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

## FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## OPINION

----------

## I. Introduction

Appellant William Berry Waters, III, appeals his sentence for felony driving while intoxicated (DWI), contending in five points that the prosecutor's remarks during closing argument at the punishment phase warrant a new punishment hearing. We affirm.

## II. Background

The indictment charging Appellant with felony DWI included an enhancement paragraph alleging that he had a prior felony DWI conviction, and a habitual offender paragraph alleging that he had still another prior conviction for felony DWI. After the jury returned a guilty verdict in the instant case, the court's charge on punishment instructed the jury that the applicable range of punishment was confinement for twenty-five years to ninety-nine years or life. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4 (b) (Vernon Supp. 2010). The charge also included statutorily required good conduct and parole instructions, advising the jury that the actual time Appellant served in prison could be reduced by the award of good-conduct time or by the award of parole; that Appellant would not become eligible for parole until the actual time served plus any good-conduct time earned equaled the lesser of one-fourth of the sentence imposed or fifteen years; and that parole eligibility does not mean that parole will be granted. *See id.* The prosecutor addressed these instructions in his closing argument at punishment. The jury assessed punishment at sixty years' confinement, and the trial court sentenced Appellant accordingly.

In five points on appeal, Appellant contends that the trial court erred by overruling his objections to several of the prosecutor's remarks during closing argument at punishment.

### III. Remarks About Parole Instructions

In his first point, Appellant claims that the prosecutor's remarks, reproduced below, improperly urged the jury to consider how the parole laws would be applied specifically to him. The record transcribed during the initial portion of the State's closing argument at punishment includes the following:

> [PROSECUTOR]: . . . So what do we do here? This whole thing about parole, it's in your charge. I want you to -- -- to look at this. It says, "Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time-off a period of incarceration imposed through the award of good[-]conduct time." That means -- --
>
> THE COURT: Three minutes, counsel.
>
> [PROSECUTOR]: Thank you.
>
> That means if he's a good prisoner, if he goes down and does what he's supposed to do, he can get extra credit. He also gets good time for any time he's already served up until this point since this case has happened. All right? And it says that when the actual time that he serves plus the good-conduct time equals one-fourth of whatever sentence that he gets, then he'll be eligible for parole. That doesn't mean he'll get it, but he'll be eligible for parole.
>
> It also says that the -- -- when it equals one-fourth of the sentence imposed, or 15 years, whichever is less, that means if you give him anywhere from 60 to 99 years, he becomes eligible for parole after 15 years. Okay? And that includes good-conduct time. *So if he has good-conduct time that gives him extra credit, he might -- -- it'd be less than 15 years. Okay? You understand that?*
>
> *All right. So the reality of the situation is, if you give him 60 years or more, you're doing all that you can do. The question is -- --*
>
> [DEFENSE COUNSEL]: Hold on a minute. Judge, I'm going to object to that. That violates the -- the -- -- the charge of the Court. That's not to be considered by the jury, and I object to counsel arguing that.

3

THE COURT: Overruled.

[PROSECUTOR]: The question is, "*what statement do you want to make?*"

(emphasis added).

Appellant contends that the italicized remarks were improper because they specifically invited jurors to consider the application of the parole law to him.

In its response, the State contents itself to stand mute on the merits while arguing procedural default and harmless error. We are not persuaded by the State's preservation arguments, and, despite the State's underwhelming silence on the merits, because of our disposition below, we need not address harm.

The State first argues that Appellant's objection was too general to preserve his complaint for review because he did not object that the prosecutor improperly urged the jury to apply the parole laws specifically to him; instead he objected that the argument violated the court's charge and was something the jury could not consider. The State cites examples of cases wherein, after having overruled objections, trial courts uttered something on the record positively evincing their understanding of what the objections were about. But our rules of error preservation require no such affirmative declarations by trial courts. At most, a trial court need only *rule* on an objection, either expressly or *implicitly*. Tex. R. App. 33.1(a)(2)(A). Moreover, even an imprecise objection preserves error when "the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A); *see Taylor v.* State, 939 S.W.2d 148, 155 (Tex. Crim. App.

4

1997) ("Where the record makes clear that the trial court understood an objection and its legal basis, a trial court's ruling on that objection will be preserved for appeal, despite an appellant's failure to clearly articulate the objection.").  As the court of criminal appeals has made abundantly clear:

> As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it. Of course, when it seems from context that a party failed effectively to communicate his desire, then reviewing courts should not hesitate to hold that appellate complaints arising from the event have been lost. But otherwise, they should reach the merits of those complaints without requiring that the parties read some special script to make their wishes known.

*Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

Here, as the prosecutor discussed the paragraphs concerning parole laws in the court's charge, Appellant objected, "That violates the -- the -- -- the charge of the Court.  That's not to be considered by the jury, and I object to counsel arguing that."  The objection is quite specific.  In context, we think the trial court understood the objection as a complaint that the prosecutor's comments urged the jury to stray from the charge's instructions that it was not to consider how the parole laws might be applied to Appellant.

The State next argues that the objection does not comport with Appellant's point on appeal.  We have already held that Appellant's objection, "That violates the . . . charge of the court" was sufficient to inform the trial court and the prosecutor the nature of Appellant's complaint.  Appellant's point on appeal is

5

that the prosecutor's remarks urged the jury to apply the parole laws specifically to him, which Appellant contends violated the court's charge not to consider the manner in which the parole law may be applied to him. This sufficiently comports with Appellant's objection at trial. *See* Tex. R. App. P. 38.9.

Finally, the State draws upon cases holding that opponents to the admission of *evidence* must continue to object when similar *evidence* is offered at the risk of forfeiting any claims based on the trial court's admission of *evidence* to argue that failure to keep objecting to similar *argument*s also forfeits error. We need not decide whether rules that apply to preserving complaints about evidence properly apply to those about argument because we find nothing objectionable in the arguments that the State claims Appellant should have objected to in order to preserve his complaint about the arguments he did object to.

To conclude, we hold that Appellant has preserved his first point for review. Therefore, we will consider its merits.

In support of his contention that the prosecutor improperly urged the jury to consider how the parole laws would be applied specifically to him, Appellant relies on the reasoning and analysis of three cases from our sister courts—*Chester v. State*, 167 S.W.3d 935 (Tex. App.—Amarillo 2005, pet. ref'd); *Perez v. State*, 994 S.W.2d 233 (Tex. App.—Waco 1999, no pet.); and *Facundo v. State*, 971 S.W.2d 133 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd).

In *Chester*, during closing argument at punishment the prosecutor remarked, "If there is a 20 year sentence, Mr. Chester will not become eligible for parole until his actual time served, plus whatever credit they give him for good time served, equals 5 years . . . ." 167 S.W.3d at 936. The Seventh Court of Appeals, after lauding the State for conceding error, held that the remarks were harmful, and remanded for a new punishment hearing. *Id*. at 936–38.

In *Perez*, the Tenth Court of Appeals held that the remarks, "anything you give *him* over 60 years, *he's* eligible for parole after 30 years" and that asking the jury to "set the proper sentence" based on this information improperly encouraged the jury to consider the effects of parole on Perez's punishment and were therefore improper. 994 S.W.2d at 237 (emphasis in original).

And in *Facundo*, the Fourteenth Court of Appeals held that the trial court properly sustained the State's objections to defense counsel's arguing at punishment, "But when *you* examine what Our Honor told *you* on the parole factor, remember this and read the law here, and basically what this says is: *For example, if you assess ten years in prison, what it says here, he's got to serve five years flat*" and "if *the defendant* is sentenced to a term of imprisonment, *he* will not become eligible for parole until the actual time served equals one-half of the sentence imposed. *So you can do simple mathematics on that*." 971 S.W.2d at 135–36 (emphasis in original).

The reasoning in these cases may be traced to one of ours. *See Chester*, 167 S.W.3d at 937 (citing *Facundo*, 971 S.W.2d at 135–36); *Perez*, 994 S.W.2d

7

at 237 (citing *Taylor v. State*, 911 S.W.2d 906, 912, 914 (Tex. App.—Fort Worth, 1995, pet. ref'd); *Facundo*, 971 S.W.2d at 136 (citing *Taylor*, 911 S.W.2d at 911). In *Taylor*, a panel of this court held that closing arguments at the punishment phase were proper because the prosecutor did not make any attempt to apply the parole instructions in the charge specifically to the defendant. 911 S.W.2d at 912. We observed that while counsel may explain the existence of parole rules as set out in the charge, generally, counsel must take caution to avoid applying those rules specifically to the defendant on trial. *Id*. at 911.

We are not, of course, bound by the decisions of our sister courts, generally, or by our own, particularly, when it becomes apparent that our reasoning was unsound. And it should go without saying that we cannot follow our earlier decisions when they are later overturned, explicitly or otherwise, by the court of criminal appeals.

The reasoning these cases relied upon, and upon which Appellant now seizes, appears not to have survived the court of criminal appeals' more recent decision in a case also styled *Taylor v. State*, and found at 233 S.W.3d 356 (Tex. Crim. App. 2007). In that *Taylor*, the court of criminal appeals held that it was not improper for prosecutors to explain how the parole eligibility rules set out in jury charges applied to certain sentences and to specific defendants. *Id*. at 358–59. There, the appellant had complained of remarks made by the prosecutor that bear a striking resemblance to those that the Amarillo Court of Appeals held improper in *Chester*:

8

A 40-year sentence means the defendant becomes eligible for parole after serving 20 years.

. . . .

A 60-year sentence means he becomes eligible after serving 30 years.  A sentence of life or 75 still means he becomes eligible after 30 years.

*Id*. at 358–59.

Judge Keller wrote for the majority that the issue was "whether it was improper for [the prosecutor] to explain how these parole eligibility rules applied to certain sentences, and also whether [the prosecutor] stepped over the line by incidentally referring to 'the defendant' and 'he' in his explanation."  *Id.* at 358.  The court of criminal appeals answered both questions "no," reasoning that:

> In *Hawkins v. State*, [135 S.W.3d 72, 84 (Tex. Crim. App. 2004)] we explained that "[i]t was not improper for the prosecutor to accurately restate the law given in the jury charge." [footnote omitted]  In the case before us, the prosecutor did not convey any information beyond what was properly contained in the charge when he explained how the parole eligibility rules set out in the charge worked with forty, sixty and seventy-five year sentences.  The explanation simply ensured that the jury understood the language set out in the instructions.  Nor do we ascribe any significance to the prosecutor's passing use of the words "defendant" and "he" in the course of giving his explanation.  The statutory instruction itself uses the words "defendant" and "he" when describing the rules of parole eligibility.  Nothing in this case indicates that the prosecutor's explanations went beyond an attempt to clarify the meaning of the jury instructions.

*Id.* at 359.

Judge Womack, joined by Judges Meyers and Price, concurred, opining that the reason the prosecutor's remarks were not error was explained by Justice

Frost in another concurring opinion. *Id.* at 360 (Womack, J., concurring) (citing

*Byrd v. State*, 192 S.W.3d 69, 72 (Tex. App.—Houston [14th Dist.] 2006, pet.

ref'd) (Frost, J., concurring).  Judge Womack quoted Justice Frost approvingly:

> [I]n cases involving an article 37.07, section 4(a) jury instruction,[1] the jury may base its assessment of punishment in part on consideration of a sentenced defendant's parole eligibility under the formula contained in the instruction; however, a jury may not base its assessment of punishment on speculation as to when, if ever, the defendant may be released on parole after becoming eligible for parole.  Therefore, the jury instruction in article 37.07, section 4(a) that the jury is "not to consider the manner in which the parole law may be applied to this particular defendant" refers to speculation about when, if ever, this particular defendant might be released on parole.  It does not refer to the jury's consideration of a sentenced defendant's parole eligibility under the formula contained in the instruction.

*Id*. at 360 (Womack, J., concurring) (quoting *Byrd*, 192 S.W.3d at 72 (Frost, J.,

concurring) (citations omitted)).

This is sound reasoning.  A jury must base its punishment decision upon

the evidence before it.  It may not base its decision on evidence that may or may

not exist at some point in the future.  There will never be evidence at trial of

whether prison authorities will extend or withdraw good-conduct time to a

particular defendant because those decisions will be made, if ever, by prison

---

[1]The instructions in sections 4(a) and 4(b), which applied in the instant case, are practically identical.  They differ in that 4(a) states that parole eligibility occurs when actual time served equals the lesser of one-half of the sentence imposed or 30 years, without consideration for good conduct time, whereas 4(b) states that eligibility occurs when actual time plus any good-conduct time equals the lesser of one-fourth of the sentence imposed or 15 years.  *Compare* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) with *id*. at § 4(b).

authorities *after that convicted defendant begins serving his sentence*. Thus, juries properly are instructed not to consider "the extent to which good[-]conduct time may be awarded to or forfeited by this particular defendant." Tex. Code Crim. Proc. Ann. art. 37.07, § 4. Likewise, there will never be evidence at trial of how parole authorities will apply parole laws to decide whether a particular defendant will be awarded parole because those laws are applied *after that convicted defendant becomes eligible for parole.* Thus, juries properly are instructed that they "are not to consider the manner in which the parole law may be applied to this particular defendant." *Id.* Any consideration at trial of whether the defendant would be awarded or would forfeit good-conduct time or how the parole laws would be applied to him would necessarily be based on speculation. That is why such consideration, properly, is prohibited.

But juries are not instructed not to use the parole eligibility instructions in the charge to fashion a sentence that ensures that defendants will become eligible at the most distant possible date. To impose such a prohibition is inconsistent with the instruction itself. Equating the prohibition of inviting speculation as to when a specific defendant might be paroled with one that seeks to prevent juries from using the formula they are given in the charge to affect parole eligibility leads to the absurd expectation that juries can consider the existence of good-conduct time, and how that works into the formula for determining parole eligibility but still refrain from applying that formula in working out an appropriate punishment.

11

What a jury can properly do, in following the charge, is determine how long a term it wishes a defendant to serve before that defendant may become *eligible* for parole because the jury is instructed on good-conduct time and is furnished the formula for determining eligibility. *See id.* A jury, however, may not consider when, if ever, that defendant actually might be *awarded* parole (it must disregard whether the defendant will receive or forfeit good-conduct time and whether he will be awarded parole). *See Turner v. State*, 87 S.W.3d 111, 116 (Tex. Crim. App. 2002), *cert denied*, 538 U.S. 965 (2003). These are distinct issues one of which is properly placed into the hands of jurors, to some degree, and the other of which is properly in the hands of officials in whose keep the defendant is placed after the jury has done its part in sentencing.

Here, Appellant complains of the remark, "*So if he has good-conduct time that gives him extra credit, he might -- --  it'd be less than 15 years. Okay?  You understand that?*" But the charge states that "the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good[-]conduct time" and that "he will not become eligible for parole until the actual time served plus any good[-]conduct time earned equals one-fourth of the sentence imposed or fifteen (15) years, whichever is less." The highlighted portions of the prosecutor's remarks were nothing more than accurate restatements of the instructions in the charge. In explaining how a sixty-year sentence would work, he said, "*So if he has good-conduct time that*

12

*gives him extra credit, he might -- -- it'd be less than 15 years.*" We hold that there is no error in this part of the argument.

Appellant also complains of the remark, "*So the reality of the situation is, if you give him 60 years or more, you're doing all that you can do.*" This, too is true to the charge. One-fourth of sixty is fifteen. Because the charge states that Appellant would become eligible for parole when any accrued good-conduct time and actual time served reached one-fourth of the sentence or fifteen years, *whichever is less*, any sentence beyond sixty years does not affect when Appellant would become parole eligible under the formula in the charge. From the perspective of a jury that might wish to assure that Appellant stay incarcerated for as long as possible, a sentence of sixty years is all that jury can do. In so doing, it does not resort to speculation about how much, if any, good-conduct time appellant might receive or forfeit or whether he might be released early on parole, it merely applies the mathematical formula in the charge. Certainly a prosecutor is entitled to argue for a stiff sentence. And indeed, it has been noted that the purpose of the Legislature's change in the statute to allow juries to consider the existence of good-conduct time and release on parole was to produce longer sentences. *See Grigsby v. State*, 833 S.W.2d 573, 573–76 (Tex. App.—Dallas 1992, pet. ref'd); *Parker v. State*, No. 08-03-00172-CR, 2004 WL 2113050, at *11 (Tex. App.—El Paso Sept. 23, 2004, no pet.) (not designated for publication).

13

In conclusion, we hold that the prosecutor's remarks accurately restated the law given in the jury charge. *See Taylor*, 233 S.W.3d at 359. Nor was there any error in referring specifically to Appellant. *See id.* The prosecutor did not convey any information beyond what was properly contained in the charge, and he did not urge the jury to make a decision on punishment based on speculation of matters that were not properly before it. *See id.*; *Hawkins*, 135 S.W.3d at 84.

## IV. Remarks Appellant Claims Were Outside the Record

In points two through five, Appellant complains that the following remarks from the State's closing argument at the end of the punishment phase were outside the record:

> [THE PROSECUTOR]: Because no matter what you give him, you can't guarantee when he's next going to be out there, drinking and driving. That's the reality of the situation.
>
> And you know what? He hasn't hurt anybody yet. And - - and that has to be said. *What if it had been a little girl or boy standing on the corner instead of just a curb?*
>
> [Appellant's objection to "counsel arguing facts that are not in evidence" overruled.] (Emphasis as given in Appellant's brief).
>
> [THE PROSECUTOR]: I do feel sorry for this [Appellant's] family. But you know what? Every day that he's in the penitentiary, they're going to know that he's safe, that he's not out there about to kill himself out on the roads, or kill somebody else, they're going to know exactly - -
>
> [DEFENSE COUNSEL]: Judge, whoa, whoa, whoa, whoa. I'm going to object to - - I'm going to object to that. That's improper argument about this defendant killing somebody. Now, that is not base - - that is not the evidence in this case, and I object to it.
>
> [Objection overruled.]

14

[THE PROSECUTOR]: And when he goes down to the penitentiary, what message does he carry with him? "Oh, I was arrested six times for DWI, convicted five times, and they gave me the minimum sentence." I can't - - I can't in good conscience agree that that's the right thing to do.

THE COURT: Two minutes, counsel.

[THE PROSECUTOR]: *The reality of the situation is I cannot live with myself if one day a few years later from now I picked up the paper and I saw that this man had run over somebody and killed them.*

[DEFENSE COUNSEL]: Now Judge, wait a minute, I'm going to object to that. That is absolute speculation, surmise and suspicion of this lawyer, not based on one fact in this evidence and I object to it.

THE COURT: Overruled.

[DEFENSE COUNSEL]: I specifically object to running over and killing somebody in the record.

(Emphasis as given in Appellant's brief).

[THE PROSECUTOR]: *I could not live with myself if I picked up the paper and read something like that, even if he had run off the road in a ditch and killed himself - -*

[DEFENSE COUNSEL]: Object, Judge - -

[PROSECUTOR]: - -when he could have been - -

[DEFENSE COUNSEL]: I object for the same reason, on *speculation, surmise - -*

[Running objection granted.]

*- -* when he could have been safe and sound somewhere else, somewhere his family can visit him.

15

I ask that you give him 60 years. That's my recommendation, because by doing that, you're putting him away for as long as you can, but you're not telling him he's a bad person, you're keeping our community safe, and you're sending a message with him that we will not tolerate this type of behavior, "we will not tolerate this type of behavior."

(Emphasis as given in Appellant's brief).

Appellant contends that by overruling his objections, the trial court erred because the prosecutor improperly argued matters outside the record.[2]

In *Strahan v. State*, the court of criminal appeals held that the prosecutor's remarks during closing argument in a DWI trial, "When you and your family are on these highways driving you can't help but sometimes wonder if some drunk driver is going to hit you, run over you and kill you," was an appeal for strict law enforcement and presented no error. 358 S.W.2d 626, 627 (Tex. Crim. App. 1962). Similarly, the court of criminal appeals held that the argument, "And I ask you to find the defendant guilty and all those like him because we are all going to get in our cars, and we are going to go home" was "nothing more than a plea for law enforcement." *Nichols v. State*, 504 S.W.2d 462, 465 (Tex. Crim. App. 1974).

---

[2]To the extent that Appellant's complaint is that the prosecutor's remarks to the effect that he could not live with himself if he read that Appellant had killed someone improperly injected the prosecutor's personal opinion, we hold that Appellant's objections at trial preserved only his claim that the prosecutor improperly urged the jury to speculate about evidence not in the record; i.e., that someone could have been injured or killed. *See* Tex. R. App. P. 33.1(a)(1)(A); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999); *Bell v. State*, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 827 (1997).

In *Pittman v. State*, the appellant in a DWI trial had been stopped after driving through a traffic light four seconds after it turned red; but there was no evidence that he had injured anyone. 9 S.W.3d 432, 434 (Tex. App.—Houston [14th Dist.] 1999, no pet.) Several times during closing argument, the prosecutor remarked to the effect that the appellant "is going to kill someone some day." *Id*. The prosecutor also argued that prison is "one place where we know that he can't go kill someone." *Id.* The Fourteenth Court of Appeals held that "the seven statements relating to appellant killing another person" were all "proper pleas for law enforcement." *Id.*

In *Yocom v. State*, we held that where, although there was no evidence in the appellant's DWI trial that he had injured anyone, the prosecutor's remark, "He made it somehow to Euless. Are we lucky nobody died? Yes, we are" was a reasonable deduction from the evidence where the evidence showed that the appellant had admitted drinking at a bar in Dallas, was extremely intoxicated, and had pulled over in Euless because he was not feeling well. No. 02-03-00181-CR, 2004 WL 742888, at *1, *12 (Tex. App.—Fort Worth Apr. 8, 2004, pet. ref'd) (not designated for publication).

And finally, in *Bobbit v. State*, we held that the prosecutor's argument in a DWI trial that drunk drivers like the defendant injure or kill innocent people was an unobjectionable plea for law enforcement as well as a reasonable deduction from the evidence. No. 02-01-00506-CR, 2003 WL 21197606, at *1 (Tex. App.—Fort Worth May 22, 2003, no pet.) (mem. op., not designated for publication).

17

Based on these precedents, we hold that the prosecutor's remarks in this case referring to the risks of injury or death imposed by drunk drivers, regardless of the lack of evidence in the record that someone was injured or killed, are proper pleas for law enforcement.

Furthermore, the remarks were proper responses to arguments made by opposing counsel. Before the remarks of which Appellant complains, Appellant's counsel had argued, "There's no evidence in this case that Berry Waters ever hurt anybody. Berry Waters is not a murderer, he's not a rapist, he hasn't abused your children or mine, he hadn't committed sexual assaults, he hadn't done all the things that - - he's not a pedophile. He hasn't done those kind[s] of things that I tell you that justify, in my opinion, a long-term prison sentence." He also argued, "And I'll say to you on behalf of this [Appellant's] family, please don't punish Berry for being some kind of criminal. Please don't punish him for being some kind of a violent guy that you're afraid to put back on the streets of the community." Given Appellant's counsel's argument that Appellant didn't deserve a long prison term because he didn't hurt anybody, the prosecutor's remarks were proper responses. *See Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990). Accordingly, we overrule points two through five.

18

## V. Conclusion

Having overruled all of Appellant's points, we affirm the trial court's judgment.

LEE GABRIEL
JUSTICE

PANEL:  DAUPHINOT, WALKER, and GABRIEL, JJ.

DAUPHINOT, J., filed a dissenting opinion.

PUBLISH

DELIVERED:  November 4, 2010



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00080-CR

WILLIAM BERRY WATERS, III                    APPELLANT

V.

THE STATE OF TEXAS                              STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## DISSENTING OPINION

------------

I agree with the majority that it is "absurd" to expect "juries [to] consider the existence of good-conduct time[] and how [it factors] into the formula for determining parole eligibility but still refrain from applying that formula in [determining] an appropriate punishment."[3]   It is particularly absurd when the State's jury argument dwells on computing the mathematics of parole law as applied to the specific defendant:

---
[3]Majority op. at 11.

*So if he has good-conduct time that gives him extra credit, he might — — it'd be less than 15 years. Okay? You understand that?*

*All right. So the reality of the situation is, if you give him 60 years or more, you're doing all that you can do.*

The Texas Court of Criminal Appeals has instructed us that the jury is "not to consider the manner in which the parole law may be applied to [a] particular defendant" but that it is perfectly acceptable for the jury to consider how the parole law applies to the particular defendant by deciding the earliest date on which the jury wants the particular defendant to first become eligible for parole.[4] Rather than play semantic games, we should look to the plain meaning of the statute.[5] But it makes no sense:

> In the penalty phase of the trial of a felony case in which the punishment is to be assessed by the jury rather than the court, if the offense is punishable as a felony of the first degree, if a prior conviction has been alleged for enhancement of punishment as provided by Section 12.42(b), (c)(1) or (2), or (d), Penal Code, or if the offense is a felony not designated as a capital felony or a felony of the first, second, or third degree and the maximum term of imprisonment that may be imposed for the offense is longer than 60 years, unless the offense of which the jury has found the defendant guilty is an offense that is punishable under Section 21.02(h), Penal Code, or is listed in Section 3g(a)(1), Article 42.12, of this code or the judgment contains an affirmative finding under Section 3g(a)(2), Article 42.12, of this code, the court shall charge the jury in writing as follows:

---

[4]*See Taylor v. State,* 233 S.W.3d 356, 360 (Tex. Crim. App. 2007) (Womack, J., concurring) (quoting *Byrd v. State*, 192 S.W.3d 69, 76 (Tex. App.— Houston [14th Dist.] 2006, pet. ref'd) (Frost, J., concurring)).

[5]*See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(b) (Vernon Supp. 2010).

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed or 15 years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.[6]

The legislature could solve the problem by admitting that it wants the jury to consider how the parole law might apply to a particular defendant and by expressly allowing evidence and argument on parole eligibility. Or the legislature could remove its mandate requiring the nonsensical jury instruction and state clearly that parole should not be placed before the jury because the jury's

---

[6]*Id.*

22

function is to decide the appropriate sentence for the defendant based on the facts of the case as they stand on the day of trial. But courts should not expand or contract the clear language of a statute, no matter how nonsensical it may be.

To say that a jury who is urged to consider a particular defendant's parole eligibility date is not considering how the parole law applies to that particular defendant defies any rational thought. I am aware that this court is required to follow the precedent of the Texas Court of Criminal Appeals,[7] and I realize that the majority does exactly what it is required to do in following that precedent. But because the reasoning and the result so directly conflict with the clear legislative mandate, conscience requires that I respectfully dissent.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: November 4, 2010

---

[7]See *Taylor*, 233 S.W.3d at 359.