

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00034-CR

DAVID WAYNE GISH                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## MEMORANDUM OPINION[1]

----------

In six points that all concern the alleged ineffectiveness of his trial counsel, appellant David Wayne Gish appeals his forty-year sentence for burglary of a habitation.[2]  Because we conclude that appellant has not satisfied his burden to prove his points, we affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]Appellant does not ask us to reverse his conviction; instead, he wants us to remand this case to the trial court for a new punishment trial.

**Background Facts**

A grand jury indicted appellant with burglary of a habitation.[3] The indictment alleged that he entered the habitation to commit theft, and it asserted that he had already been convicted of three other burglaries.[4] Appellant elected the jury to assess punishment in the event of his conviction.

After a jury was selected following the parties' voir dire, appellant pled guilty in the presence of the jury and pled true to the indictment's enhancement allegations.[5] The State called witnesses who testified about the burglary in this case (in which appellant broke a glass door with a brick to enter a house and steal money) and other burglaries appellant had committed. Appellant called his ex-mother-in-law and ex-wife to testify about his character. Appellant's ex-mother-in-law said that appellant had good potential, that she "just love[d]" him, and that he could "fix anything."

---

[3]*See* Tex. Penal Code Ann. § 30.02(a)(1), (3) (Vernon 2003).

[4]Burglary of a habitation with the intent to commit theft is usually a second-degree felony that carries a punishment range of two to twenty years' confinement. *See* Tex. Penal Code Ann. § 12.33(a) (Vernon Supp. 2010), § 30.02(c)(2). But when a defendant who has previously been convicted of a felony is convicted of a second-degree felony, the second-degree felony is punished as a first-degree felony, which carries a maximum punishment of ninety-nine years or life in prison. *Id.* §§ 12.32(a), .42(b) (Vernon Supp. 2010).

[5]A "plea of guilty made to a jury is the functional equivalent of a jury verdict of guilty. . . . The case simply proceeds with a unitary punishment hearing." *Fuller v. State*, 253 S.W.3d 220, 227 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 904 (2009) (footnote omitted).

After the parties presented closing arguments, the jury assessed appellant's punishment at forty years' confinement, and the trial court sentenced him accordingly. Appellant filed a motion for new trial, contending that the verdict was contrary to the law and the evidence and that he was represented ineffectively by counsel. He also filed notice of this appeal.

## Ineffective Assistance of Counsel

In six related points, appellant argues that his trial counsel was ineffective for failing to object to various aspects of the State's closing argument. He contends that the State's argument asked the jury to apply parole law to him, which violated a provision in the code of criminal procedure and contradicted the jury charge.

**Standard of review**

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the

particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair and reliable trial. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

**Analysis**

In her closing argument, the prosecutor told the jury, in part,

Let's look at the defendant's record, because that's something else you can consider. January 31st, 2005, this defendant broke into a home in Tarrant County, burglarized, was sentenced to four years in prison. February 20th, 2005, not even a month later, he does it again, Tarrant County, gets four years in prison. And February 21st, the next day, does it again, gets four years in prison. Now, he pled [guilty to] all of those on the same day, so all of those ran concurrently, so even though he's been sentenced to 12 years in prison total, you know, he had to serve four at one time. Well, we know that he got sentenced in May of 2005 and he was out, burglarizing homes in Hood County in March of 2008, so we know he didn't serve all four years, and we know he was on parole when he was supposed to be being watched at that time. . . .

. . . .

. . . He has already been sentenced to 12 years in prison and has served some of that time, we don't know how much, so he had a shot to grow up.

Now, if the good Mr. Gish shows up in prison, Mr. Fix-it, then the judge tells you that he can earn good time, and that can shorten his sentence, because the time, amounts of time he served plus the amount of good time he gets, *when that equals 15 years or one-fourth of his sentence, he gets out.* So think about that when you're deliberating. We don't have any reason to believe that he won't be good in prison. He hasn't -- doesn't have anything to steal there, can't break into people's homes, so, you know, maybe he'll get a job fixing up something at the prison, he'll get good time credit for that.

. . . .

He hasn't learned his lesson yet, ladies and gentlemen. He hasn't grown up yet. . . . This is a career burglar at age 23. . . . And the only way, as I mentioned before, to keep him from performing his chosen profession is to keep him in prison, the only way we can be sure he's not burglarizing your home or someone else's.

5

If you give this defendant, Mr. Gish, a sentence of sixty years, we know that he could be out in 15. *But we know that every -- he can earn his way out in 15 years*, and we know that for every single day of that 15 years, those 15 years, he's not going to be terrorizing somebody else and breaking into their house. That, we can know for sure. That, you can take to the bank. So without any hesitation, I'm going to ask you for a sentence of 60 years on this defendant. Make him serve that 15-year minimum and keep us safe for 15 years. Thank you. [Emphasis added.]

Appellant contends that his trial counsel's failure to object to these statements comprised ineffective assistance.[6]

We have recently explained that while it is not improper for the State to explain how parole eligibility rules apply to certain sentences, the State may not ask a jury to consider how good-conduct time may be awarded to a particular defendant or how parole law will particularly affect the defendant's sentence. *See Waters v. State*, No. 02-10-00080-CR, 2010 WL 4570016, at *4–6 (Tex. App.—Fort Worth Nov. 4, 2010, pet. filed) (citing *Taylor v. State*, 233 S.W.3d 356, 359 (Tex. Crim. App. 2007)). In other words,

> What a jury can properly do . . . is determine how long a term it wishes a defendant to serve before that defendant may become *eligible* for parole . . . . A jury, however, may not consider when, if ever, that defendant actually might be *awarded* parole (it must disregard whether the defendant will receive or forfeit good-conduct time and whether he will be awarded parole).

*Id.* at * 6 (citing *Turner v. State*, 87 S.W.3d 111, 116 (Tex. Crim. App. 2002), *cert. denied*, 538 U.S. 965 (2003)).

---

[6]Appellant raises his points through ineffective assistance claims because absent an objection to a jury argument at trial, nothing is presented for review. *Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004).

We affirmed the driving while intoxicated conviction in *Waters* because we held that the prosecutor "did not urge the jury to make a decision on punishment based on speculation of matters that were not properly before it." *Id.* at *7. But the prosecutor did so in this case. Here, the prosecutor told the jury that when appellant's time served plus good-conduct time equals fifteen years or one-fourth of his sentence, "he gets out." This is an incorrect statement of the law because parole eligibility does not guarantee release. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(b) (Vernon Supp. 2010); *Ex parte Geiken*, 28 S.W.3d 553, 556 (Tex. Crim. App. 2000); *Felan v. State*, 44 S.W.3d 249, 257 (Tex. App.—Fort Worth 2001, pet. ref'd) ("Parole . . . is completely discretionary."). For the same reason, the prosecutor incorrectly told the jury that appellant would "earn his way out in 15 years." Thus, we hold that at least part of the prosecutor's argument was improper under *Waters*.[7]

Appellant must show more than the impropriety of the prosecutor's argument, however, to prevail on his ineffective assistance claims; he must demonstrate by a preponderance of the evidence that his counsel was ineffective

---

[7]Appellant also contends, in his first two points, that the portion of the prosecutor's argument in which she told the jury, with respect to appellant's previous burglaries, that he "got sentenced in May of 2005 and he was out, burglarizing homes in Hood County in March of 2008, so we know he didn't serve all four years," was improper. Appellant asserts that this statement "argue[d] the operation of parole laws," and he relies on a provision of the code of criminal procedure. Tex. Code Crim. Proc. Ann. art. 37.07, § 4(d) ("This section does not permit the introduction of evidence on the operation of parole and good conduct time laws."). Because of the reasoning in our disposition below, we will not address whether this portion of the prosecutor's argument was also improper.

7

by not objecting to the argument and that, if a proper objection was made, the result of his trial—the jury's forty-year punishment assessment—would have been different. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show a reasonable likelihood that his counsel's failure to object to the prosecutor's statements effectively increased his sentence.

Under the mandate from article 37.07, the trial court's charge to the jury included the following language:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.
>
> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.
>
> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed or 15 years, whichever is less. *Eligibility for parole does not guarantee that parole will be granted.*
>
> *It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.*
>
> You may consider the existence of the parole law and good conduct time. *However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular*

8

*defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.* [Emphasis added.]

See Tex. Code Crim. Proc. Ann. art. 37.07, § 4(b).

In *Colburn v. State*, during deliberations in a capital murder case, the jury sent out a note stating, "Given a life sentence, is there a possibility of parole in this case?" 966 S.W.2d 511, 519 (Tex. Crim. App. 1998). The trial court replied by explaining, "[T]he jury is prohibited from considering parole in any manner when considering whether a Defendant should be sentenced to life or death. You are instructed, therefore, to follow the law of this state and not consider parole in any manner." *Id.* The defendant moved for a mistrial on the ground that the jury was considering parole in its deliberations. *Id.* But the court of criminal appeals affirmed the trial court's decision to overrule the mistrial motion, reasoning in part,

> We generally presume the jury follows the trial court's instructions in the manner presented. The presumption is rebuttable, but appellant has pointed to no evidence in rebuttal. Appellant did not file a motion for new trial alleging juror misconduct or obtain a hearing to adduce facts not in the record. As such, the only evidence that the jury considered parole is the jury note. Even if the note constitutes evidence the jury discussed parole at a *preliminary point*, we presume they followed the court's instructions and thereafter did not consider it in reaching their verdict.
>
> Appellant says the jury's consideration of parole deprived him of a "fair trial." In light of the court's proper instruction, we presume the jury did not consider parole.

*Id.* at 520 (citations omitted).

9

Similarly, in *Miles v. State*, the prosecutor interrupted the defendant's closing argument through an objection in which the prosecutor incorrectly stated that the presumption of the defendant's innocence ended once the trial began. 204 S.W.3d 822, 823–24 (Tex. Crim. App. 2006), *cert. denied*, 549 U.S. 1266 (2007). The trial court *sustained* the prosecutor's incorrect objection. *Id.* at 824. The court of criminal appeals held that although the State's objection (and the trial court's sustaining of that objection) was wrong, the error did not require reversal of the conviction. *Id.* at 826–28. Citing *Colburn*, the court reasoned in part, "[T]he trial court's charge to the jury included an accurate and thorough explanation of the presumption of innocence and what it means in a court of law, and, in the absence of evidence to the contrary, we will assume that the jury followed its written instructions." *Id.* at 827–28.

The presumption described in *Colburn* and *Miles*—that juries follow the trial court's instructions to them—is a longstanding maxim that has been repeated many times by the court of criminal appeals. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005); *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996); *Ainsworth v. State*, 517 S.W.2d 274, 277 (Tex. Crim. App. 1975). We have also relied on the maxim. *See Walker v. State*, 300 S.W.3d 836, 850 (Tex. App.—Fort Worth 2009, pet. ref'd); *Tell v. State*, 908 S.W.2d 535, 540 (Tex. App.—Fort Worth 1995, no pet.) ("The jury was charged not to consider how good conduct time or the parole law might be applied to Tell. Nothing in the record indicates that the jury did not follow the trial court's

10

instruction, and this court must presume that it did."); *see also Jones v. State*, 264 S.W.3d 26, 29 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("Because a jury is presumed to follow the trial court's instructions, it is presumed that the jury did not consider parole."); *Boudreaux v. State*, 723 S.W.2d 230, 232 (Tex. App.—Beaumont 1986, no pet.) ("[T]he jury was charged that it could not consider the . . . manner in which the parole law may be applied to this particular Appellant. Intermediate appellate courts are to presume that the jury followed the trial court's instructions.").

Like in *Tell*, nothing in the record here indicates that the jury did not follow the trial court's unambiguous, explicit instruction—to not consider the manner in which the parole law may be applied to appellant—that was contained in the same document in which the jury wrote its punishment decision.[8]  Similarly, nothing indicates that the jury was swayed in its punishment decision by the objectionable parts of the State's argument.  In fact, while the State discussed the potential for parole as background for specifically asking the jury to give appellant sixty years' confinement, the jury rejected the State's request by giving him only forty years.  Thus, because appellant has not met his burden to show the contrary, we will apply the well-founded presumption that the jury followed the trial court's explicit, unambiguous instructions.  *See Miles*, 204 S.W.3d at 823–

---

[8]We also note that the charge in this case told the jury, "You are instructed that any statements of counsel . . . not in harmony with the law as stated to you by me in these instructions, are to be wholly disregarded."

11

24; *Tell*, 908 S.W.2d at 540; *see also Ladd v. State*, 3 S.W.3d 547, 570 (Tex. Crim. App. 1999) (holding that the defendant's failure to prove prejudice from his defense counsel's allegedly deficient performance during the punishment phase of a capital murder trial precluded relief on an ineffective assistance claim), *cert. denied*, 529 U.S. 1070 (2000); *Mitchell v. State*, 989 S.W.2d 747, 748 (Tex. Crim. App. 1999) (explaining that a court of appeals may not assume prejudice in an ineffective assistance of counsel claim).

Also, without any aid from the State's closing argument, the jury could have rationally found that the facts in this case justified a forty-year sentence, which is on the lower end of the first-degree felony range. *See* Tex. Penal Code Ann. § 12.32(a); *see also Hawkins v. State*, 135 S.W.3d 72, 85 (Tex. Crim. App. 2004) (concluding that the defendant's other offenses that could have supported a lengthy setence were relevant considerations in an analysis of the effect of a prosecutor's argument about the application of parole law); *Perez v. State*, 994 S.W.2d 233, 238 (Tex. App.—Waco 1999, no pet.) (holding that a prosecutor's argument about parole was improper but harmless because, among other facts, evidence in the case supported the defendant's sentence of life imprisonment). The jury received evidence showing that appellant had already been convicted for committing three burglaries in 2005 and that, despite therefore spending time in the penetentiary, he committed three more buglaries after being released.

Appellant relies on *Chester v. State* to argue that the prosecutor's erroneous argument about parole law caused harm. 167 S.W.3d 935, 936–38

(Tex. App.—Amarillo 2005, pet. ref'd).[9] But in *Chester*, the defendant timely objected to the State's parole argument; he therefore did not have a burden to show, by a preponderance of the evidence in an ineffective assistance claim, that the result of the trial would have been different. *See id.* at 936. Similarly, in *Hawkins*, which is another case relied on by appellant, the defendant timely objected, and the court of criminal appeals therefore applied the harm standard for nonconstitutional error, in which the defendant does not have a burden. 135 S.W.3d at 74; *see* Tex. R. App. P. 44.2(b); *Johnson v. State*, 43 S.W.3d 1, 5 (Tex. Crim. App. 2001) (holding that there is no burden on the defendant or the State to demonstrate whether a defendant has been harmed under rule 44.2(b)); *cf. Perez v. State*, 310 S.W.3d 890, 893–94 (Tex. Crim. App. 2010) (reiterating that the "defendant bears the burden of proving ineffectiveness by a preponderance of the evidence" and explaining that showing only that an error had a conceivable effect on the outcome of a proceeding does not suffice).

For these reasons, without deciding whether appellant's trial counsel fell below the standard of prevailing professional norms by not objecting to the State's improper jury argument, we hold that appellant has not shown by a preponderance of the evidence that there is a reasonable probability that, but for counsel's alleged deficiency, the jury's assessment of forty years' confinement

---

[9]In *Waters*, we questioned the validity of the Amarillo Court of Appeals's holding in *Chester* about the propriety of the prosecutor's argument. *See Waters*, 2010 WL 4570016 at *4.

would have been different.  *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *see also Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003) (declining to address the second prong of *Strickland* when the defendant did not prove the first prong).  Thus, we overrule appellant's six points.

## Conclusion

Having overruled all of appellant's points, we affirm the trial court's judgment.

<div style="margin-left: 50%;">

TERRIE LIVINGSTON
CHIEF JUSTICE
</div>

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 13, 2011

14